907 F.2d 936
 Celia ANDERSON, Plaintiff-Appellant,
v.
DEPARTMENT OF HEALTH AND HUMAN SERVICES; Margaret Heckler,
Secretary, Department of Health and Human Services; Food
and Drug Administration; and Dr. Frank Young, M.D.,
Commissioner, Food and Drug Administration, Defendants-Appellees,
and
Dow Corning Corporation, Defendant/Intervenor-Appellee.
 Nos. 86-2246, 86-2495.
 United States Court of Appeals,
Tenth Circuit.
 June 22, 1990.
 
 Daniel F. Bertch of Robert J. Debry & Associates (Robert J. Debry of Robert J. Debry & Associates, with him on the brief), Salt Lake City, Utah, for plaintiff-appellant.
 Burt A. Braverman of Cole, Raywid & Braverman, Washington, D.C. (Susan Paradise Baxter and Kenneth A. Grant of Cole, Raywid & Braverman, Washington, D.C., Ray R. Christensen of Christensen, Jensen & Powell, Salt Lake City, Utah, and Harvey Steinberg of Dow Corning Corp., Midland, Mich., with him on the brief), for defendant/intervenor-appellee.
 Before HOLLOWAY, Chief Judge, and BARRETT and EBEL, Circuit Judges.
 EBEL, Circuit Judge.
 
 
 1
 This appeal concerns plaintiff-appellant Celia Anderson's attempt under the Freedom of Information Act ("FOIA"), 5 U.S.C. Sec. 552, to compel defendant-appellee Food and Drug Administration ("FDA") to disclose certain documents submitted to the FDA by defendant-intervenor Dow Corning Corporation. The district court granted summary judgment to defendants, holding that the requested documents contain confidential information that is exempt from the disclosure requirements of the FOIA. We affirm in part, reverse in part, and remand.
 
 
 2
 The following issues are raised on appeal: (1) whether Exemption 4 of the FOIA, 5 U.S.C. Sec. 552(b)(4), allowed the FDA to refuse to disclose all of the documents at issue; (2) whether 18 U.S.C. Sec. 1905, 21 U.S.C. Sec. 360j(c), or 21 U.S.C. Sec. 331(j) justify nondisclosure of the documents pursuant to Exemption 3 of the FOIA, 5 U.S.C. Sec. 552(b)(3); and (3) whether the district court should have vacated its judgment pursuant to Federal Rule of Civil Procedure 60(b)(3).
 
 FACTS
 
 3
 Appellant sued Dow in state court for injuries allegedly caused by an injection of liquid silicone manufactured by Dow.[1] In connection with her state suit, appellant submitted a FOIA request to the FDA in order to obtain over 16,000 pages of documents that Dow had submitted to the FDA concerning Dow's liquid silicone, which is still in the testing phase and for which Dow has been seeking FDA approval for over 20 years. The FDA rejected appellant's request.
 
 
 4
 The documents at issue consist of over 16,000 pages contained in a Notice of Claimed Investigational Exemption for a New Drug ("IND"), a New Drug Application ("NDA"), and an Application for an Investigational Device Exemption ("IDE"), all submitted by Dow to the FDA. An IND is filed as a precondition to clinical testing of a drug. 21 U.S.C. Sec. 355(i), 21 C.F.R. Sec. 312.50. Once the IND is approved by the FDA, the sponsor of the new drug can ship the drug for use in clinical tests, the results of which are reported to the FDA. 21 C.F.R. Sec. 312.10. When adequate evidence of complete clinical testing has been submitted to the FDA, the sponsor may file an NDA, the approval of which is required before a drug can be marketed in interstate commerce. 21 U.S.C. Sec. 355(a), (b), and (j). The NDA must contain extensive data regarding the composition, manufacture, and effects of the drug, including full reports of clinical and nonclinical investigations, adverse reaction reports, and published articles on the effectiveness of the drug. 21 C.F.R. Sec. 314.50.
 
 
 5
 After Dow filed its IND for injectable silicone, amendments to the Food, Drug, and Cosmetic Act were passed, giving the FDA regulatory authority over medical devices. As a result of those amendments, injectable silicone was reclassified from a drug to a medical device, and Dow was required to convert its IND to an Application for an Investigational Device Exemption ("IDE"), the medical device equivalent of an IND. See 21 U.S.C. Sec. 360j(g); 21 C.F.R. Sec. 812.20. Dow's IDE essentially contains the research that has been carried out by Dow under its IND and NDA.[2]
 
 
 6
 Appellant brought suit in the district court seeking disclosure of the documents in the IND, NDA and IDE pursuant to the FOIA. Dow intervened and has defended the action on behalf of the FDA. Dow prepared an eighty-five page "Vaughn index"[3] listing roughly 16,000 documents at issue by in-house number. Across from the entries was a brief description of the document(s) and a coded explanation referring to one of seven specific categories of information "for which confidentiality is claimed:"
 
 
 7
 1. Manufacturing and processing information, including formulations, chemistry and quality assurance procedures.
 
 
 8
 2. Protocols, including forms for reporting results of research and informational materials supplied to clinical investigators.
 
 
 9
 3. Preclinical test data.
 
 
 10
 4. Clinical test data including adverse reaction reports and interim data.
 
 
 11
 5. Patient information.
 
 
 12
 6. Contractor and consultant identities.
 
 
 13
 7. Marketing, sales and customer information.
 
 
 14
 Vaughn Index at iv. In addition to those brief explanations, Dow filed as an exhibit the affidavit of Robert T. Rylee, II, a Vice President and General Manager of Dow. In that affidavit, Mr. Rylee provided more thorough explanations of the seven justifications listed in the Vaughn index. However, Mr. Rylee's affidavit did not elaborate on the description or asserted justification for nondisclosure of the individual documents.
 
 
 15
 For approximately half of the documents listed in the Vaughn index, no coded explanation entry appeared. Instead, Dow had written "n/a" in the explanation column. In the introduction to the Vaughn index, Dow explained its reasons for not disclosing those documents for which no explanation had been offered:
 
 
 16
 This index identifies portions of the documents at issue that are subject to withholding because they contain privileged or confidential commercial information or trade secrets within the meaning of Exemption 4 of the Freedom of Information Act, 5 U.S.C. Sec. 552, and the Trade Secrets Act, 18 U.S.C. Sec. 1905. However, Dow Corning also asserts that all of the documents at issue, including documents or portions of documents that have not been identified in this index as falling within Exemption 4 or the Trade Secrets Act, are required to be withheld pursuant to Defendant FDA's statutory authority and implementing regulations.
 
 Vaughn Index at iv-v.[4]
 
 17
 The district court granted Dow's motion for summary judgment, determining that there were no material facts in dispute and holding that the documents at issue are exempt from disclosure pursuant to Exemptions 3 and 4 of the FOIA, 5 U.S.C. Sec. 552(b)(3) & (4), and are prohibited from disclosure under 18 U.S.C. Sec. 1905, 21 U.S.C. Sec. 331(j), and 21 U.S.C. Sec. 360j(c). See R.Doc. 71 (August 12, 1986 Order).
 
 
 18
 Appellant subsequently obtained all of the documents at issue through discovery in her state court suit. The documents, however, are subject to a protective order entered in that suit that prohibits their use outside the litigation. Appellant still seeks the documents free from any restrictions, claiming that she wants to make the public aware of the dangers of silicone injections. See Appellant's Br. at 5.
 
 
 19
 After appellant filed the first of these two appeals (No. 86-2246), she discovered additional evidence which, in her view, indicated that Dow's documents did not contain trade secrets. Armed with the new evidence, appellant filed a motion to vacate the district court's judgment pursuant to Federal Rule of Civil Procedure 60(b)(3). The district court denied appellant's motion. She then filed the second of these appeals (No. 87-2495), challenging the district court's denial of her Rule 60(b)(3) motion.
 
 ANALYSIS
 
 20
 Congress enacted the FOIA in 1966, and it became effective in 1967. It generally provides that the public has a right of access, enforceable in court, to federal agency records, subject to nine specific exemptions. See 5 U.S.C. Sec. 552. The basic purpose of the Act "is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 242, 98 S.Ct. 2311, 2327, 57 L.Ed.2d 159 (1978). To achieve that goal, the FOIA is designed to " 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.' " Wren v. Harris, 675 F.2d 1144, 1145 (10th Cir.1982) (quoting Department of the Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976)). The FOIA is to be broadly construed in favor of disclosure, Alirez v. NLRB, 676 F.2d 423, 425 (10th Cir.1982), and its exemptions are to be narrowly construed. Irons & Sears v. Dann, 606 F.2d 1215, 1219 (D.C.Cir.1979), cert. denied, 444 U.S. 1075, 100 S.Ct. 1021, 62 L.Ed.2d 757 (1980). The federal agency resisting disclosure bears the burden of justifying nondisclosure. Alirez, 676 F.2d at 425.
 
 
 21
 The FOIA contains nine exemptions from disclosure, set forth at Section 552(b). Those exemptions are exclusive under the Act. See 5 U.S.C. Sec. 552(c); E.P.A. v. Mink, 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). The following two exemptions are relevant to this appeal:
 
 
 22
 This section [requiring disclosure of government documents] does not apply to matters that are--
 
 
 23
 ....
 
 
 24
 (3) specifically exempted from disclosure by statute ... provided that such statute (A) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;
 
 
 25
 (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential....
 
 
 26
 5 U.S.C. Sec. 552(b)(3) and (4).
 
 De Novo Review By the District Court
 
 27
 When an action is brought under the FOIA to obtain information in the possession of a government agency, the district court must review de novo the agency's decision not to disclose the requested materials. See DeSalvo v. I.R.S., 861 F.2d 1217, 1221 (10th Cir.1988). The district court must determine whether all of the requested materials fall within an exemption to the FOIA and may not simply conclude that an entire file or body of information is protected without consideration of the component parts. See United States Dept. of Justice v. Julian, 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988);[5] 5 U.S.C. Sec. 552(b) ("Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."); see also Federal Bureau of Investigation v. Abramson, 456 U.S. 615, 626-27, 102 S.Ct. 2054, 2062, 72 L.Ed.2d 376 (1982) ("Congress intended for courts to 'consider the nature of the particular document as to which exemption is claimed, in order to avoid the possibility of impermissible 'commingling' by an agency's placing in an investigatory file material that did not legitimately have to be kept confidential.' " (quoting NLRB v. Robbins Tire & Rubber Co., 437 U.S. 214, 229-30, 98 S.Ct. 2311, 2321, 57 L.Ed.2d 159 (1978)).
 
 
 28
 In order to fulfill its obligation to review de novo the agency's decision not to disclose materials sought under the FOIA, a district court has a variety of options. "The FOIA allows the district court flexibility in utilizing in camera review of the disputed documents, indexing, oral testimony, detailed affidavits, or alternative procedures to determine whether a sufficient factual basis exists for evaluating the correctness of the [agency] determination in each case." DeSalvo, 861 F.2d at 1222, n. 6. Although a Vaughn index is an often-employed means for reviewing the agency decision,[6] if the index is insufficient, then the district court must utilize other procedures in order to develop an adequate factual basis for review of the agency action. "Where the agency affidavits merely parrot the language of the statute and are drawn in conclusory terms, the court's responsibility to conduct de novo review is frustrated." Carter v. United States Dept. of Commerce, 830 F.2d 388, 393 (D.C.Cir.1987) (quotations omitted ).
 
 
 29
 The District Court may, in its discretion, order production of the [withheld] material or some sample thereof for in camera inspection.... Moreover, should the task of in camera inspection prove too burdensome, the court may allow appellant to engage in further discovery, or order the [agency] to supplement its Vaughn filings.
 
 
 30
 ....
 
 
 31
 Whether the District Court proceeds by ordering supplemental affidavits or by an in camera inspection of documents or samplings, it must ensure that it has an adequate foundation for review of the [agency's] withholding claims.
 
 
 32
 King v. United States Dept. of Justice, 830 F.2d 210, 225-26 (D.C.Cir.1987). A second problem which may require the district court to look beyond the Vaughn index and agency affidavits arises when there is evidence of agency bad faith. "[I]f information contained in the agency affidavits is contradicted by other evidence in the record--then, in camera inspection may be necessary to insure that agencies do not misuse the FOIA exemptions to conceal non-exempt information." Carter, 830 F.2d at 393; See Ingle v. United States Dept. of Justice, 698 F.2d 259, 266 (6th Cir.1983).[7]
 
 
 33
 On appeal, the initial inquiry of the circuit court is whether the district court had an adequate factual basis upon which to base its decision. See King, 830 F.2d at 225. In addition, where the district court has granted summary judgment in favor of the government agency, we must review de novo the district court's legal conclusions that the requested materials are covered by the relevant FOIA exemptions. See Johnson v. United States Dept. of Justice, 739 F.2d 1514, 1517 (10th Cir.1984).
 
 
 34
 In this case, the record upon which the district court based its conclusions consisted entirely of the Vaughn index and affidavit described above. The district judge ruled from the bench and did not discuss the individual bases for his ruling:
 
 
 35
 THE COURT: Seems to me that the exemptions claimed by the party defendant acting through its surrogate, the intervenor, are appropriate exemptions justifying the non-disclosure at this time of the documents sought under both the provisions of the statute and the provisions of the regulation so that the cross-motion of the defendant, intervenor, will be granted.
 
 
 36
 . . . . .
 
 
 37
 PLAINTIFF'S COUNSEL: Your Honor, if I may ask a question about your ruling. Does that ruling intended [sic] to encompass also the 50 percent of the documents that we talked about earlier where they say non-
 
 
 38
 THE COURT: Their motion is granted.
 
 
 39
 See R.Vol. V at 33. In a written order which followed, the district court stated that "[b]ased on the uncontested facts that appear of record and for the reasons stated in open court, the court concludes that the documents at issue are exempted from disclosure by exemptions 3 and 4 of the FOIA, 5 U.S.C. Sec. 1905 and 21 U.S.C. Secs. 331(j) & 360j(c)." Dist.Ct.Op. at 2. We now proceed to evaluate the adequacy of the record and the correctness of the district court's conclusions in the context of the individual exemptions at issue.
 
 1. Exemption 4
 
 40
 The district court held that many of the documents here are covered by Exemption 4 of the FOIA. By its terms, Exemption 4 exempts from disclosure trade secrets and commercial or financial information that is privileged or confidential. "Like all FOIA exemptions, exemption 4 is to be read narrowly in light of the dominant disclosure motif expressed in the statute." Washington Post Co. v. United States Dept. of Health & Human Services, 865 F.2d 320, 324 (D.C.Cir.1989).
 
 A. Trade Secrets
 
 41
 Appellant argues that not all of the documents at issue are trade secrets exempted from disclosure and that a document-by-document review is required. We agree that a more particularized review of the documents (whether by in camera review, supplementation of the Vaughn index, review of more detailed affidavits, or otherwise) is required.
 
 
 42
 Initially, we must decide upon the proper definition of the term "trade secrets" in Exemption 4. Appellees urge us to adopt the broad definition of "trade secrets" set forth in the first Restatement of Torts, Sec. 757 comment b (1939):
 
 
 43
 A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.... A trade secret is a process or device for continuous use in the operation of the business.
 
 
 44
 The FDA has adopted that definition at 21 C.F.R. Sec. 20.61(a): "A trade secret may consist of any formula, pattern, device, or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."
 
 
 45
 The D.C. Circuit rejected that broad definition in Public Citizen Health Research Group v. Food and Drug Administration, 704 F.2d 1280 (D.C.Cir.1983). That court concluded that the agency's interpretive regulation was not binding because "Congress has made clear both that the federal courts, and not the administrative agencies, are ultimately responsible for construing the language of the FOIA, see 5 U.S.C. Sec. 552(a)(4)(B)(1976), and that agencies cannot alter the dictates of the Act." Id. at 1287.[8] The court proceeded to explain that the Restatement definition was "inconsistent with the language of the FOIA and its underlying policies." Id. at 1288. Instead, the court decided that trade secrets should be defined in the narrower common law sense, as "a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort." Id. at 1288 (footnote omitted). That definition requires that there be a "direct relationship" between the trade secret and the productive process. Id.
 
 
 46
 We agree with the D.C. Circuit's narrow definition because we believe that it is more consistent with the policies behind the FOIA than the broad Restatement definition. Of the arguments put forth by that court in support of its construction, we find most compelling the observation that adoption of the Restatement definition of "trade secrets" would render superfluous the "commercial or financial information" prong of Exemption 4 because there would be no category of information falling within the latter but outside the former. Like the D.C. Circuit, we are reluctant to construe the FOIA in such a manner. "A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." J. Sutherland, Statutes and Statutory Construction, Sec. 46.06 at 104 (C. Sands 4th ed. rev. 1984).
 
 
 47
 Applying the narrower definition to this case, we must remand the case to the district court because we cannot tell if the district court applied that definition and because that court did not make sufficient findings for us to review on appeal. Neither the district court's ruling from the bench nor the subsequent written order make clear which documents the court believed were exempt as "trade secrets," and which documents were exempt on other grounds. Any attempt on our part to determine which of defendants' seven proposed classifications of the enormous number of documents at issue were adopted by the district court as trade secrets would be sheer speculation. Although we believe that the majority of documents which Dow sought to exclude under the descriptive category of "manufacturing and processing information, including formulations, chemistry and quality assurance procedures" are probably within the narrow definition of trade secrets under Exemption 4, we cannot tell if the district court considered other documents to be trade secrets as well. The district court may have believed that documents which were withheld under the other six listed explanations[9] were also trade secrets. Therefore, on remand the district court must review Dow's claims of exemption, applying the narrow definition of trade secrets, and make findings that adequately explain the basis of its ruling and that relate its rulings either to specific documents or to clearly described categories of documents that are drawn with sufficient precision so that all documents within a particular category are similar in nature.[10]
 
 B. Commercial Information
 
 48
 If not a trade secret, for Exemption 4 to apply the information must be "(a) commercial or financial, (b) obtained from a person, and (c) privileged or confidential." National Parks and Conservation Ass'n v. Morton, 498 F.2d 765, 766 (D.C.Cir.1974). Although the documents at issue clearly satisfy the first two requirements, appellant argues that not all of the documents here are "privileged or confidential" and that a document-by-document review is necessary to determine which documents are exempted from disclosure. Again, we agree that a more particularized review is required, though we leave selection of the best method to accomplish that to the district court's discretion.
 
 
 49
 (1) Privilege
 
 
 50
 Defendants contend that the documents at issue are "privileged" because they are protected by a state protective order which was entered pursuant to Utah Rule of Civil Procedure 26(c)(7) in appellant's products liability action against Dow.[11] We recognize that certain types of discovery privileges may constitute an additional ground for nondisclosure under FOIA Exemption 4. However, on the few occasions when this ground for exemption has been recognized under Exemption 4, the underlying privilege has been for privileges not otherwise specifically embodied in the language of Exemption 4 such as the attorney-client privilege, see Miller, Anderson, Nash, Yerke & Wiener v. Department of Energy, 499 F.Supp. 767, 771 (D.Or.1980), the attorney work product privilege, see Indian Law Resource Center v. Dept. of the Interior, 477 F.Supp. 144, 148 (D.D.C.1979), and the confidential report privilege, see Washington Post Co. v. HHS, 603 F.Supp. 235, 237-39 (D.D.C.1985), rev'd on other grounds, 795 F.2d 205 (D.C.Cir.1986). However, recognition of a privilege for materials protected as a "trade secret or other confidential research, development or commercial information" pursuant to a protective order under Rule 26(c)(7) would be redundant and would substantially duplicate Exemption 4's explicit coverage of "trade secrets and commercial or financial information." See Federal Open Market Committee v. Merrill, 443 U.S. 340, 360, 99 S.Ct. 2800, 2812, 61 L.Ed.2d 587 (1979).[12] Therefore, we hold that materials which are the subject of a protective order under rule 26(c)(7) are not privileged for purposes of FOIA Exemption 4 because the determination of whether documents contain trade secrets under Exemption 4 is to be made solely by applying the express exemption for trade secrets and confidential commercial or financial information found in the exemption itself.
 
 
 51
 If we were to adopt a contrary rule and establish that Rule 26(c)(7) constitutes an independent ground of privilege under Exemption 4, then we would have to confront several complicated issues which we do not today address. For instance, we would have to decide the issue of whether federalism principles would be offended if a state court protective order were to be binding upon a federal court's FOIA decision. We would also have to determine whether the definition of "trade secret or other confidential research, development or commercial information" under the state protective order employs the same definition as that to be used by a federal court in applying Exemption 4. Given the special considerations favoring disclosure under FOIA, it is not at all clear that the definitions utilized by a state court under a state version of Rule 26(c)(7) would be the same as those governing the FOIA.
 
 
 52
 Finally, we would need to determine how much relief would have to be granted under Rule 26(c)(7) before such relief rises to the level of a privilege. Rule 26(c)(7) authorizes a district court to establish protective orders within a wide range of alternatives. A protective order may completely bar discovery of trade secret materials or it may merely dictate the time, place and manner in which the discovery is to occur. It cannot be argued seriously that a Rule 26(c)(7) order merely limiting production of certain documents to a specified place renders those materials privileged for FOIA purposes. We do not read Federal Open Market Committee as establishing such an overly broad concept of privilege in the Exemption 5 context.[13] Here, Dow was compelled to disclose to appellant all or much of the disputed materials, albeit with the requirement that their use be limited to that litigation. Such disclosure is inconsistent with ordinary concepts of privilege in which discovery is entirely prohibited. Moreover, this type of restriction on the use of discovery material is not extraordinary, as it is frequently entered upon joint stipulation of the parties and without the careful scrutiny that should be required if it is to have preclusive effect on a FOIA determination. In any event, becaause we hold that the term "privilege" in Exemption 4 does not encompass materials that are the subject of a limited protective order under rule 26(c)(7), we do not need to grapple with these difficult issues.
 
 
 53
 (2) Confidential
 
 
 54
 Appellees also contend that the information here is "confidential." Commercial or financial information is "confidential" for purposes of Exemption 4 if disclosure of the information is likely "(1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." National Parks, 498 F.2d at 770 (footnote omitted).[14]
 
 
 55
 As a preliminary matter, we must determine if there was a material fact in dispute on this issue precluding the entry of summary judgment. Appellant argues that the district court's entry of summary judgment in favor of defendants was improper because there was a dispute of material fact concerning whether or not Dow intended to market its silicone product. Appellant maintains that whether or not Dow intended to market the silicone is material to determining whether the disputed documents are "confidential" for purposes of FOIA Exemption 4.
 
 
 56
 We review the district court's grant of summary judgment de novo applying the same legal standard used by the district court under Rule 56(c) of the Federal Rules of Civil Procedure. Osgood v. State Farm Mut. Auto. Ins. Co., 848 F.2d 141, 143 (10th Cir.1988). Summary judgment should be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When applying this standard, we are to examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. Gray v. Phillips Petroleum Co., 858 F.2d 610, 613 (10th Cir.1988).
 
 
 57
 If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence--using any of the materials specified in Rule 56(c)--that would entitle it to a directed verdict if not controverted at trial.... Such an affirmative showing shifts the burden of production to the party opposing the motion and requires that party ... to produce evidentiary materials that demonstrate the existence of a "genuine fact" for trial.
 
 
 58
 Celotex Corp. v. Catrett, 477 U.S. 317, 331, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (citation omitted).
 
 
 59
 Dow, as intervenor, would bear the burden of persuasion at trial on the issue of whether the documents at issue are confidential under FOIA Exemption 4. In order to show substantial competitive injury, Dow must prove that it actually faces competition and that "substantial competitive injury would likely result from disclosure." National Parks and Conservation Ass'n v. Kleppe, 547 F.2d 673, 679 (D.C.Cir.1976). Therefore, because Dow bears the burden of persuasion on the issue over which appellant maintains a material dispute of fact exists, we apply the principles of Celotex as described above.
 
 
 60
 In support of its motion for summary judgment, Dow relied on the following affidavit testimony of Robert T. Rylee II, Vice-President and General Manager of Dow:
 
 
 61
 Dow Corning has always intended to actively pursue all marketing opportunities for injectable silicone once appropriate FDA clearances are obtained. For a brief period in the mid-1970's, it appeared that Dow Corning would encounter difficulties in obtaining ultimate FDA marketing approval. Therefore, during this brief period, Dow Corning had doubts whether marketing would ever be a possibility. These doubts account for statements made at that time, that marketing was not intended in the foreseeable future. Subsequently, these doubts were resolved with the establishment of a new FDA-approved clinical testing program.
 
 
 62
 . . . . .
 
 
 63
 Then and now, potential markets for injectable silicon exist not only in the United States but also abroad. When marketing approval is obtained, Dow Corning intends to market this product internationally as well as nationally.
 
 
 64
 Rylee Affidavit at 20-21.
 
 
 65
 Appellant maintains that the following evidence raised a question of material fact about whether Dow intends to market its silicon product once it is approved. First, appellant relies on a letter dated May 17, 1977 from A.H. Rathjen, a Senior Clinical Research Specialist for Dow, stating that "Dow has no intention now, or in the foreseeable future to actively seek FDA approval of the [liquid silicon product] nor does it have any present plans to market this product to the medical profession." See R. Vol. I., Doc. 50, Exhibit A. Appellant also submitted a letter from Mr. Rathjen dated October 28, 1983 which states, in relevant part, as follows:
 
 
 66
 [S]hortly after [a 1975 NDA submission to the FDA], Dow Corning elected voluntarily, without influence from any outside source, to withdraw our NDA. We realized that there were no regulations on the books that would allow us to control the distribution and therefore, there was nothing that would allow us to control the use, and prevent the misuse and abuse of the drug once it was approved for shipment through interstate commerce. Therefore, ... Dow Corning voluntarily withdrew the NDA.
 
 
 67
 Id., Exhibit B (emphasis in original). Finally, appellant pointed to a third letter from Mr. Rathjen dated September 6, 1977, in which he stated: "Dow Corning has no plans now or in the foreseeable future to market this drug." Id., exhibit C.
 
 
 68
 The district court correctly ruled that appellant's evidence did not give rise to a dispute of material fact precluding the entry of summary judgment. None of the above evidence conflicts with the statements of Mr. Rylee. The evidence is entirely consistent with Rylee's statements that in the late 1970's Dow did not have an immediate intent to market its silicon product. Appellant presented no evidence conflicting with Rylee's statements that Dow had the intention to market the silicon product when, and if, it obtained satisfactory marketing approval from the FDA. Therefore, the district court was correct in holding that there are no material facts in dispute.[15]
 
 
 69
 Although we agree with the district court that there were not any material facts in dispute precluding a ruling that some of the materials described in the Vaughn index were "confidential," we cannot determine from the record before us which documents the district court in fact believed to be "confidential." For the same reason that we are unable to evaluate the correctness of the district court's ruling on which of the listed documents constitute "trade secrets" under Exemption 4, we must remand in order for the district court to clarify further which documents, if any, it believes are "confidential" within the meaning of Exemption 4.[16] In addition, should the district court determine that any of the documents are exempt because they contain confidential commercial or financial information such that disclosure would cause substantial harm to Dow's competitive position, the district court must make sufficient findings to support any such conclusion.[17]
 
 2. Exemption 3
 
 70
 As first enacted, Exemption 3 protected information "specifically exempted from disclosure by statute." 5 U.S.C. Sec. 552(b)(3) (1970). The Supreme Court interpreted that language as manifesting congressional intent to allow statutes that permitted the withholding of confidential information, and that had been enacted prior to the enactment of the FOIA, to remain unaffected by the disclosure mandate of the FOIA. Administrator, FAA v. Robertson, 422 U.S. 255, 265, 95 S.Ct. 2140, 2147, 45 L.Ed.2d 164 (1975). In Robertson, the Court specifically held that Section 1104 of the Federal Aviation Act of 1958, which allowed the FAA Administrator to withhold from the public any FAA material when he believed that "a disclosure of such information ... is not required in the interest of the public," was an Exemption 3 statute.
 
 
 71
 Fearing that the Supreme Court's interpretation would allow agencies to evade the FOIA's disclosure policy, Congress effectively overruled Robertson in a 1976 amendment to Exemption 3. See H.R.Rep. 94-880, reprinted at 1976 U.S.Code Cong. and Admin.News 2183, 2205 (1976).
 
 
 72
 Exemption 3, as amended, now allows the withholding of information prohibited from disclosure by another statute only if the matters are "specifically exempted from disclosure by statute" and the statute either "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. Sec. 552(b)(3). A statute falls within Exemption 3's coverage if it satisfies either one of those disjunctive requirements lettered "(A)" and "(B)". See American Jewish Congress v. Kreps, 574 F.2d 624, 628 (D.C.Cir.1978).
 
 
 73
 We now examine the statutes relied upon by the district court to decide whether they are Exemption 3 statutes and, if so, whether they support the district court's decision.
 
 A. 18 U.S.C. Sec. 1905
 
 74
 The Trade Secrets Act, 18 U.S.C. Sec. 1905, is a general criminal confidentiality statute. It provides:
 
 
 75
 Whoever, being an officer or employee of the United States or of any department or agency thereof, or agent of the Department of Justice as defined in the Antitrust Civil Process Act (15 U.S.C. 1311-1314), publishes, divulges, discloses, or makes known in any manner or to any extent not authorized by law any information coming to him in the course of his employment or official duties or by reason of any examination or investigation made by, or return, report or record made to or filed with, such department or agency or officer or employee thereof, which information concerns or relates to the trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation, or association ... shall be fined not more than $1,000, or imprisoned not more than one year, or both; and shall be removed from office or employment.
 
 
 76
 18 U.S.C. Sec. 1905 (emphasis added).
 
 
 77
 The Supreme Court has not resolved the issue of whether Section 1905 is an Exemption 3 statute. See Chrysler v. Brown, 441 U.S. 281, 319 n. 49, 99 S.Ct. 1705, 1726 n. 49, 60 L.Ed.2d 208 (1979).[18] However, most lower federal courts that have considered the issue have concluded that Sec. 1905 does not qualify as an Exemption 3 statute. E.g., CNA Financial Corp. v. Donovan, 830 F.2d 1132, 1138 (D.C.Cir.1987) (Section 1905 does not satisfy either of the requirements of Exemption 3), cert. denied, 485 U.S. 977, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988); Florida Medical Ass'n v. United States Dept. of Health, Education & Welfare, 479 F.Supp. 1291, 1302 (M.D.Fla.1979); United Technologies Corp. v. Marshall, 464 F.Supp. 845, 851 (D.Conn.1979); St. Mary's Hospital, Inc. v. Califano, 462 F.Supp. 315, 317 (S.D.Fla.1978), aff'd sub nom. St. Mary's Hospital, Inc. v. Harris, 604 F.2d 407 (5th Cir.1979); cf. General Elec. Co. v. U.S. Nuclear Regulatory Commission, 750 F.2d 1394, 1402 (7th Cir.1984) (Section 1905 and Exemption 4 are coextensive); 9 to 5 Organization v. Board of Governors of Fed.Res., 721 F.2d 1, 12 (1st Cir.1983) ("[I]f the government cannot prove that the requested documents are within FOIA exemption 4, their disclosure will not violate section 1905."). But see, e.g., Burroughs Corp. v. Brown, 501 F.Supp. 375, 382 (E.D.Va.1980), rev'd on other grounds sub nom. General Motors Corp. v. Marshall, 654 F.2d 294 (4th Cir.1981).
 
 
 78
 We agree with those courts holding that Sec. 1905 is not an Exemption 3 statute. First, we believe that the broad and ill-defined wording of Sec. 1905 fails to meet either of the requirements of Exemption 3. The prohibition in Sec. 1905 against disclosure is not absolute, as required by subpart (A) of Exemption 3. Rather, it applies only insofar as disclosure is "not authorized by law." Also, Sec. 1905's prohibition against disclosure does not categorize the information to be withheld and does not contain criteria for withholding, as required by subpart (B) of Exemption 3. Second, the legislative history of the 1976 amendment of Exemption 3 clearly states that Sec. 1905 was not intended to qualify as a nondisclosure statute. For example, the House Report states:
 
 
 79
 [T]he Trade Secrets Act, 18 U.S.C. Sec. 1905, which relates only to the disclosure of information where disclosure is "not authorized by law," would not permit the withholding of information otherwise required to be disclosed by the Freedom of Information Act, since the disclosure is there authorized by law.
 
 
 80
 H.Rep. No. 94-880, 94th Cong., 2d Sess. 23 (1976), reprinted in 1976 U.S.Code Cong. & Admin.News 2183, 2205 (1976). Therefore, we conclude that Sec. 1905, which is merely a general prohibition against unauthorized disclosure, does not support the district court's decision in this case.
 
 B. 21 U.S.C. Sec. 360j(c)
 
 81
 Another statute relied upon by the district court to justify nondisclosure is Section 360j(c) of the Medical Devices Act, 21 U.S.C. Sec. 360j(c), which provides:
 
 
 82
 Any information reported to or otherwise obtained by the Secretary or his representative under section 360c, 360d, 360e, 360f, 360h, 360i, or 374 of this title or under subsection (f) or (g) of this section which is exempt from disclosure pursuant to subsection (a) of section 552 of Title 5 by reason of subsection (b)(4) of such section shall be considered confidential and shall not be disclosed and may not be used by the Secretary as the basis for the reclassification of a device under section 360c of this title from class III to class II or as the basis for the establishment or amendment of a performance standard under section 360d of this title for a device reclassified from class III to class II, except that such information may be disclosed to other officers or employees concerned with carrying out this chapter or when relevant in any proceeding under this chapter (other than section 360c or 360d of this title).
 
 
 83
 Id. (emphasis added).
 
 
 84
 The plain language of that section reveals that its scope of protection is coextensive with Section 552(b)(4) of the FOIA. Therefore, it does not provide independent justification for nondisclosure in this case. See Public Citizen Health Research Group v. FDA, 704 F.2d 1280, 1285 (D.C.Cir.1983) (under 360j(c) "the confidential status of information is determined solely by reference to FOIA Exemption 4") (emphasis added).
 
 C. 21 U.S.C. Sec. 331(j)
 
 85
 Section 301(j) of the Food, Drug, and Cosmetic Act, 21 U.S.C. Sec. 331(j), provides:
 
 
 86
 The following acts and the causing thereof are prohibited:
 
 
 87
 (j) The using by any person to his own advantage, or revealing, other than to the Secretary or officers or employees of the Department, or to the courts when relevant in any judicial proceeding under this chapter, any information acquired under authority of [21 U.S.C. Secs.] 344, 348, 350a, 355, 356, 357, 360, 360b, 360c, 360d, 360e, 360f, 360h, 360i, 360j, 374, 376, or 379 ... concerning any method or process which as a trade secret is entitled to protection.
 
 
 88
 (Emphasis added.) Section 331(j) applies to the information sought in this case because the information was obtained pursuant to statutes referenced in Section 331(j): Dow's NDA documents were submitted to the FDA pursuant to 21 U.S.C. Sec. 355, which requires NDA's and specifies their contents; the IND was filed pursuant to 21 U.S.C. Sec. 355(i); and the IDE was filed pursuant to 21 U.S.C. Sec. 360j(g).
 
 
 89
 Initially, we must determine whether Section 331(j) is an Exemption 3 statute. We conclude that it is. First, we believe that the language of Section 331(j) meets the requirement in subpart (A) of Exemption 3 because the prohibition against disclosure is absolute and applies to any information within its scope. Second, we believe that subpart (B) also is met because Section 331(j) is specific as to the particular matters to be withheld.
 
 
 90
 Having determined that Section 331(j) qualifies as an Exemption 3 statute, we now must decide whether it is broader than Exemption 4. We hold that it is not and consequently that it cannot provide any independent justification for nondisclosure in this case. The language in Section 331(j) stating that it applies to information "concerning any method or process which as a trade secret is entitled to protection" might be construed as affording broader coverage than the coverage of "trade secrets" in Exemption 4. However, we believe such an interpretation would be contrary to the well-established rules that the FOIA is to be broadly construed in favor of disclosure, Alirez v. NLRB, 676 F.2d 423, 425 (10th Cir.1982), and its exemptions are to be narrowly construed. Irons & Sears v. Dann, 606 F.2d 1215, 1219 (D.C.Cir.1979), cert. denied, 444 U.S. 1075, 100 S.Ct. 1021, 62 L.Ed.2d 757 (1980). In light of those objectives, we believe the use of the term "concerning" should not be read as a broadening term. Rather, its presence in the section is simply necessary in order for Section 331(j) to make sense by connecting the modifying phrase "information acquired under authority of [the various statutes]" with "any method or process." If anything, Section 331(j) is arguably narrower than Exemption 4 in that it is limited to information relating to methods or processes whereas Exemption 4 applies to all trade secret information. This, also, is probably a distinction without much of a difference since we have defined trade secret to be limited to a secret "used for the making, preparing, compounding, or processing of trade commodities."
 
 
 91
 In summary, we hold that neither 18 U.S.C. Sec. 1905, 21 U.S.C. Sec. 360j(c) nor 21 U.S.C. Sec. 331(j) are broader than Exemption 4's protection of "trade secrets." However, the district court apparently relied on these statutes as independent grounds justifying nondisclosure of those documents for which Dow had put forth no Exemption 4 explanation.[19] Therefore, on remand, the district court will need to determine if those documents are exempt under Exemption 4 as either trade secrets or confidential commercial or financial information.
 
 
 92
 Almost half of the documents listed in the Vaughn index had no accompanying explanation for why they should be withheld under Exemption 4. Although there are thousands of documents listed in the index without an accompanying explanation of why they are exempt, a survey of just a few examples demonstrates that it is highly unlikely that all of those documents will be exempt from disclosure under Exemption 4 as trade secrets or confidential commercial or financial information:
 
 
 93
 "Exhibit 4", text taken from The Plastic and Reconstructive Surgery Journal, Vol. 35, No. 2, including investigation of cutaneous response to Dimethypolysilokane in animals and humans.
 
 
 94
 "Exhibit 6", text taken from the Israel Medical Journal, titled "Malignant Tumor Formation Following Subcantaneous Injection Of Silicone Fluid In White Mice."
 
 
 95
 Letter to the editor, The Lancet, re: silicone injection in mice.
 
 
 96
 Vaughn Index at 4. Because materials such as these appear to be in the public domain, no meritorious claim of confidentiality can be made. See C.N.A. Financial Corp. v. Donovan, 830 F.2d 1132, 1154 (D.C.Cir.1987). Whether the district court orders supplementation of the Vaughn index, in camera inspection, or proceeds by some other method, it will need to scrutinize carefully all of the documents being withheld and it must satisfy itself as to each document that there is a satisfactory ground under Exemption 4 to withhold such document. It then must set forth its findings with particularity so that they can be meaningfully reviewed on appeal.
 
 3. Rule 60(b)(3) Motion
 
 97
 While appellant's appeal concerning the district court's grant of summary judgment was pending, appellant filed a motion to vacate the district court's judgment pursuant to Rule 60(b)(3) of the Federal Rules of Civil Procedure. The district court denied that motion, and appellant filed a separate appeal of that denial.
 
 
 98
 Rule 60(b)(3) provides authorization to vacate a judgment for "fraud ... misrepresentation, or other misconduct of an adverse party." We review the district court's decision denying relief under that rule for abuse of discretion. See Zimmerman v. Quinn, 744 F.2d 81, 82 (10th Cir.1984).
 
 
 99
 Appellant contended in her brief that the district court erred in refusing to vacate the judgment because appellant has discovered new evidence showing that Dow committed fraud in obtaining summary judgment. At oral argument, however, appellant's counsel made it clear that appellant was no longer relying on fraud. Thus, appellant is apparently relying on "misrepresentation" or "other misconduct." The new evidence is recent deposition testimony by Mr. Rathjen obtained by appellant through discovery in her state court suit. Mr. Rathjen testified that, to his knowledge, Dow presently does not have any present plans to market liquid silicone even if Dow obtained FDA approval. That testimony is arguably inconsistent with the testimony of Dow's marketing director, which states that Dow does now intend to market the product, although it did not pursue that goal for a period in the late 1970's. Appellant argues that the research director's testimony is evidence that the documents at issue do not contain trade secrets and, as such, it should preclude a grant of summary judgment for defendants.
 
 
 100
 We affirm the district court's denial of the Rule 60(b)(3) motion because appellant has not presented "clear and convincing proof" of fraud, misrepresentation, or misconduct. See DeVargas v. Montoya, 796 F.2d 1245, 1258 (10th Cir.1986), overruled on other grounds, Newcomb v. Ingle, 827 F.2d 675 (10th Cir.1987). Seemingly inconsistent testimony does not necessarily suggest fraud, misrepresentation, or other misconduct. The district court reasonably could have concluded that the testimony merely represented different opinions or different degrees of knowledge regarding Dow's intentions. We also conclude that the district court did not abuse its discretion in refusing to conduct a hearing on this issue, in light of appellant's lack of evidence.
 
 
 101
 We hereby AFFIRM IN PART, REVERSE IN PART, and REMAND for proceedings consistent with this opinion.
 
 
 
 [1]
 Liquid silicone is used by plastic surgeons to correct facial disfigurement
 
 
 [2]
 Instead of an NDA, a sponsor of a new medical device must file a Premarket Approval Application ("PMA") as a condition to obtaining market approval. 21 U.S.C. Sec. 360e, 21 C.F.R. Sec. 814.20
 
 
 [3]
 A Vaughn index is a compilation prepared by the government agency (or intervenor) listing each of the withheld documents and explaining the asserted reason for its nondisclosure. See Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir.1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). See generally, Franklin & Bouchard, Guidebook to the Freedom of Information and Privacy Acts, Sec. 1.15 (1990)
 
 
 [4]
 Dow also stated in the introduction to the index that it "believes that portions of the documents at issue not identified in this index are withholdable as intra- or inter-agency memoranda under FOIA Exemption 5 and companion statutory and regulatory provisions, and relies on Defendant FDA to identify such materials." It is not at all clear from the record and the parties' briefs if there are documents not identified in the Vaughn index which the appellant is seeking to have disclosed. However, because appellant does not assert on appeal that there are any such documents, and because Dow does not argue on appeal that any of the disputed documents are covered by Exemption 5, we need not address either of those questions
 
 
 [5]
 In Julian, the Court held that Fed.R.Crim.P. 32(c) and the Parole Act were Exemption 3 statutes which in part prevented prison inmates from obtaining their presentence reports under the FOIA. Id., 486 U.S. at 10-11, 108 S.Ct. at 1612-13. Applying the "reasonably segregable" requirement of 5 U.S.C. Sec. 552(b) the Court concluded that although Rule 32(c) and the Parole Act "specifically exempt from disclosure any information in the report that relates to confidential sources, diagnostic opinions, and other information that may cause harm to the defendant or other third parties ... the remaining parts of the reports are not covered by this exemption , and must be disclosed unless there is some other exemption which applies to them." Id. at 9, 11, 108 S.Ct. at 1611, 1612
 
 
 [6]
 See supra note 3
 
 
 [7]
 The foregoing principles are applicable in cases such as this one where the existence of the documents or the file containing the information sought is known and is not contested and the only dispute is whether the documents are within one of the enumerated FOIA exemptions. Thus, we do not address the situation where the existence of the requested information is at issue. See e.g., National Cable Television Ass'n, Inc. v. F.C.C., 479 F.2d 183 (D.C.Cir.1973)
 
 
 [8]
 "No single agency is entrusted with FOIA's primary interpretation, and agencies are not necessarily neutral interpreters insofar as FOIA compels release of information the agency might be reluctant to disclose." Retired Railroad Workers v. Railroad Retirement Board, 830 F.2d 331, 334 (D.C.Cir.1987); see infra note 17
 
 
 [9]
 See supra text accompanying notes 3 and 4
 
 
 [10]
 The district court is entitled to considerably more assistance from the defendants than it received in this case. The burden of adequately describing the documents and of defining any narrowly-drawn categories that may be used to deal with similar documents as a group should normally be placed in the first instance on the agency or other party claiming protection for the documents requested. The district court's task is essentially one of review, but neither it nor the appellate court can adequately fulfill this function without more particularized descriptions than those that were provided here
 
 
 [11]
 The Utah rule tracks the federal rule and provides as follows:
 Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make an order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ... that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way.
 Utah R.Civ.P. 26(c)(7).
 
 
 [12]
 In Federal Open Market Committee, the Court held that if the materials protected under Federal Rule of Civil Procedure 26(c)(7), would be privileged under Exemption 5 of the FOIA. Id. at 356, 364, 99 S.Ct. at 2810, 2814. However, the Court made clear that one justification for its conclusion was the fact that adoption of such a privilege for Exemption 5 "would not substantially duplicate any other FOIA exemption." Id. at 360, 99 S.Ct. at 2812. Because Exemption 4 already explicitly exempts trade secrets and confidential commercial or financial information, it would provide a redundancy (and perhaps conflicting standards) to also allow trade secrets and confidential commercial or financial information to obtain exempt status through the separate "privilege" language in Exemption 4
 
 
 [13]
 In Federal Open Market Committee, the Court emphasized that "[u]nder the circumstances, we do not consider whether, or to what extent, [the documents at issue] would in fact be afforded protection in civil discovery. That determination must await the development of a proper record." Federal Open Market Committee, 443 U.S. at 364, 99 S.Ct. at 2814. Thus, the Court contemplated that the degree of protection extended under Rule 26(c)(7) is a consideration to be factored in the determination of privilege
 
 
 [14]
 On appeal, Dow urges us to adopt an additional consideration set forth in 9 to 5 Organization For Women Office Workers v. Board of Governors of the Federal Reserve System, 721 F.2d 1 (1st Cir.1983): whether disclosure would "harm an identifiable private or governmental interest which the Congress sought to protect by enacting exemption 4." Id. at 10. However, it appears from the record on appeal that this point was not raised before the district court. See R. Vol. II, Doc. 56 (Defendant-intervenor's Memorandum in Support of Motion For Summary Judgment). Accordingly, we will not address the issue for the first time on appeal
 
 
 [15]
 Appellant argues that there is a second material fact in dispute concerning whether Dow made bona fide efforts to market liquid silicone and whether "Dow was illegally manipulating the regulatory process by 'studying' a drug it had no intent of marketing." We see no distinction between this alleged factual dispute and that discussed above. Both questions turn on whether Dow intends to market its liquid silicon product. Moreover, to the extent that appellant seeks to challenge the propriety of Dow's filings before the FDA, a FOIA action is not the proper place to raise such a claim. Cf. 21 U.S.C. Sec. 360f(a)
 
 
 [16]
 Even if the district court had made clear findings of which documents contained trade secrets and which contained confidential commercial or financial information, we would still need to remand for supplementation of the record. As discussed in the previous section, some of the descriptions are simply inadequate to enable the district court to engage in carefully scrutinizing the claims of exemption
 
 
 [17]
 As discussed in connection with our treatment of trade secrets, the district court may utilize categories in its analysis so long as the categories are narrowly drawn and adequately described. The burden of initially defining such categories and describing the documents within particular categories may, at the discretion of the district court, initially be placed on the defendants
 
 
 [18]
 In Chrysler, the Court stated that it was not deciding "the relative ambits of Exemption 4 and Sec. 1905, or determining whether Sec. 1905 is an exempting statute within the terms of the amended Exemption 3." 441 U.S. at 319 n. 49, 99 S.Ct. at 1726 n. 49. The Court did indicate that Exemption 4 and Sec. 1905 may have the same practical scope of protection. Id
 
 
 [19]
 In ruling from the bench, the district court suggested that it might be relying on the FDA's regulations as a basis of nondisclosure under Exemption 3. However, because Exemption 3 by its terms references only statutory bases for withholding information any such reliance is misplaced
 In assessing whether sections 360j and 331(j) provide a basis for nondisclosure beyond that under Exemption 4, we need not defer to the FDA's regulations barring disclosure of any information contained in new drug files during the pendency of the application. See 21 C.F.R. Secs. 314.430, 812.38.
 The D.C. Circuit has explained why agency interpretations of statutes are not entitled to any deference in determining whether the statute at issue is an Exemption 3 statute under the FOIA. See Reporters Committee v. United States Dept. of Justice, 816 F.2d 730 (D.C.Cir.1987). In Reporters Committee, the court began by noting that the Supreme Court has interpreted the language of exemption 3 requiring that a matter be "specifically exempted from disclosure by statute" as requiring that a matter be "explicitly" exempted. Id. at 734; Baldrige v. Shapiro, 455 U.S. 345, 355, 102 S.Ct. 1103, 1109, 71 L.Ed.2d 199 (1982). The court determined that if that was Congress' intent, then "[w]e must find a congressional purpose to exempt matters from disclosure in the actual words of the statute (or at least in the legislative history of the FOIA ...)--not in the legislative history of the claimed withholding statute, nor in an agency's interpretation of that statute." Id. at 735 (citation omitted, emphasis added). The court concluded that Congress was well aware of the various ways a statute might be interpreted in determining whether it was an exemption 3 withholding statute but had selected the "plain meaning rule." Id.
 In Retired Railroad Workers Assoc. v. Railroad Retirement Board, 830 F.2d 331 (D.C.Cir.1987), the D.C. Circuit reaffirmed the standard of review announced in Reporters Committee and further explained why no deference to an administrative agency's interpretation was appropriate in an Exemption 3 FOIA case: "[n]o single agency is entrusted with FOIA's primary interpretation, and agencies are not necessarily neutral interpreters insofar as FOIA compels release of information the agency might be reluctant to disclose." Id. at 334; see also Lessner v. United States Dept. of Commerce, 827 F.2d 1333, 1335 (9th Cir.1987) ("A basic policy of [the] FOIA is to ensure that Congress and not administrative agencies determines what information is confidential. Given the court's responsibility to ensure that agencies do not interpret the exemptions too broadly, ... deference appears inappropriate in the FOIA context. However, because our conclusion is the same under either approach, we need not resolve the standard of review issue here"). We have not found any cases to the contrary suggesting that any deference to an agency regulation is appropriate in deciding whether a statute is a withholding statute under FOIA exemption 3. But cf. King, 830 F.2d at 225-26 ("in an exemption 1 case the [FBI's] expert opinion on national security matters [should be given] the substantial weight to which it is entitled").