Alvie James HALE, Jr.,
Plaintiff–Appellant,

v.

**UNITED STATES DEPARTMENT OF JUSTICE, and its component, the Federal Bureau of Investigation, Defendants–Appellees.**

No. 91–6135.

United States Court of Appeals,
Tenth Circuit.

Aug. 31, 1992.

Scott W. Braden, Asst. Appellate Public Defender, Norman, Okl., for plaintiff-appellant.

Warren D. Majors, Asst. U.S. Atty., Oklahoma City, Okl. (Timothy D. Leonard, U.S. Atty., Oklahoma City, Okl., with him on the brief) for defendants-appellees.

Before EBEL, Circuit Judge, BARRETT, Senior Circuit Judge, and PARKER, District Judge.*

EBEL, Circuit Judge.

For purposes of a collateral attack on his death sentence, Alvie James Hale, Jr. seeks to obtain certain documents from the United States Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") (collectively, "the government") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. After an *in camera* inspection of the materials in question, the district court granted the government's motion for summary judgment on the grounds that the requested documents constitute information that is exempt from FOIA's disclosure requirements under 5 U.S.C. §§ 552(b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(E). Hale appeals. We affirm the decision below.

## I. BACKGROUND

In 1983, Hale was convicted in the United States District Court for the Western District of Oklahoma of violating the Hobbs Act, 18 U.S.C. § 1951, in connection with the kidnapping and murder of William Jeffrey Perry. He was sentenced to twenty years imprisonment. In 1984, Hale was sentenced to death by the State of Oklahoma for his role in these events.

The parties to the instant case dispute the role that Hale played in Perry's kidnapping and murder. The State of Oklahoma and the government maintain that Hale committed the kidnapping and murder. Hale contends to the contrary that Perry concocted an elaborate plot to stage his own kidnapping in order to extort money from his parents to pay gambling debts and to buy drugs. Hale contends that three people were to help Perry: Hale, Nicky Johnson, and Mayo Bates. The scheme went awry, however, when Perry decided that he wanted to withdraw in the middle of the staged kidnapping. According to Hale, Johnson killed Perry and disposed of his body on Hale's father's property, where the group allegedly had been meeting, while Hale was elsewhere making the ransom calls.

█ In 1989, in the course of a collateral attack on his death sentence, Hale request-

---

* The Honorable James A. Parker, United States District Court for the District of New Mexico, sitting by designation.

ed the release of all information that the government had gathered on Perry and his kidnapping and murder pursuant to FOIA. Hale argues that he was denied access to 413 out of 1112 relevant pages, that the pages released were edited improperly, and that the agency did not release any documents concerning Perry. In particular, Hale believes that the FBI failed to disclose evidence incriminating Johnson in order to protect him as an informant for other crimes in the area. Hale argues that the withholding of this information violates FOIA.[1]

Hale first brought an administrative appeal, in response to which the agency released 21 additional pages. He then brought suit in the United States District Court for the Western District of Oklahoma, seeking injunctive relief against the government under 5 U.S.C. § 552(a)(4)(B). The government filed a motion for summary judgment together with a *Vaughn* index—*i.e.*, an itemized index of documents that have been withheld as exempt under FOIA with an explanation of why the agency believes the documents are exempt.[2] Hale filed a cross-motion for summary judgment and an objection to the *Vaughn* index. The court conducted an *in camera* inspection of the documents in question and then granted the government's motion for summary judgment.[3] Hale appeals. We have jurisdiction pursuant to 28 U.S.C. § 1291.

On appeal, we are called upon to address (1) the proper standard of review for a summary judgment motion in a FOIA case

and (2) whether the government properly claimed exemptions under 5 U.S.C. §§ 552(b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(E).

## II. DISCUSSION

### A. Standard of Review

In this Circuit, the standard of review for a summary judgment motion in a FOIA case is clear: "[W]here the district court has granted summary judgment in favor of the government agency, we must review de novo the district court's legal conclusions that the requested materials are covered by the relevant FOIA exemptions." *Anderson v. Department of Health & Human Services*, 907 F.2d 936, 942 (10th Cir. 1990) (citing *Johnson v. United States Dep't of Justice*, 739 F.2d 1514, 1517 (10th Cir.1984)); *see also KTVY–TV v. United States*, 919 F.2d 1465, 1468 (10th Cir.1990). Accordingly, we decline the government's invitation to adopt a clearly erroneous standard.[4]

As part of our de novo review of the district court's decision, we have conducted a thorough *in camera* inspection of the documents in dispute. In so doing, we examined the record and reasonable inferences therefrom in the light most favorable to Hale. *See Anderson*, 907 F.2d at 946–47. We conclude that the *Vaughn* index supplied by the government generally presents an accurate description of the materials that were redacted or withheld entirely and that the district court correctly granted the government's motion for sum-

---

**1.** Hale also asserts that the government's actions violate the Privacy Act, 5 U.S.C. § 552a. However, his brief contains no arguments to that effect. Accordingly, we do not address the merits of this assertion. *See* Fed.R.App.P. 28(a)(5); *American Airlines v. Christensen*, 967 F.2d 410, 415 n. 8 (10th Cir.1992).

In addition, Hale argues that the government's actions violate the Eighth and Fourteenth Amendments to the Constitution. We find this assertion to be without merit because the record contains no evidence that the government withheld exculpatory information. *Cf. United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985) (where defendant makes a specific *Brady* request, nondisclosure of evidence that could have been used to impeach government witnesses consti-

tutes constitutional error only if the evidence is material such that its suppression might have affected the outcome of the trial).

**2.** The term *"Vaughn* index" is derived from *Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

**3.** The court made an exception as to one document that had been withheld in its entirety, which the government later elected to release.

**4.** We note that because we affirm under a de novo standard of review, the result would have been the same had we used the more restrictive clearly erroneous standard.

mary judgment. Accordingly, we affirm the decision below.

## B. *Applicability of FOIA Exemptions*

### 1. General

■ The predominant objective of FOIA is disclosure. Congress enacted FOIA to ensure that the public has access to government information so that it can scrutinize the government's performance of its statutory duties and thereby promote governmental honesty. *See EPA v. Mink*, 410 U.S. 73, 79–80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973) (tracing the genesis of FOIA and explaining that FOIA is "broadly conceived" in that "[i]t seeks to permit access to official information long shielded unnecessarily from public view and attempts to create a judicially enforceable public right to secure such information from possibly unwilling official hands"); S.Rep. No. 813, 89th Cong., 1st Sess. 10 (1965) ("A government by secrecy benefits no one. It injures the people it seeks to serve; it injures its own integrity and operation. It breeds mistrust, dampens the fervor of its citizens, and mocks their loyalty.").

■ The public's interest in government information is not all-encompassing, however. It extends only to information that sheds light upon the government's performance of its duties. *See United States Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 774, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989) ("FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government [but that reveals little or noth-

ing about the agency's own conduct] be so disclosed.").[5]

The public's interest in government information is explicitly limited by 5 U.S.C. § 552(b), which delineates nine categories of information that are exempt from compelled disclosure. These exemptions reflect Congress' recognition that the Executive Branch must have the ability to keep certain types of information confidential. *See* S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965) ("At the same time that a broad philosophy of 'freedom of information' is enacted into law, it is necessary to protect certain equally important rights of privacy with respect to certain information in Government files, such as medical and personnel records. It is also necessary for the very operation of our Government to allow it to keep confidential certain material, such as the investigatory files of the Federal Bureau of Investigation.... Success lies in providing a workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure.").

In this case, the government invoked the exemptions set forth in 5 U.S.C. §§ 552(b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(E) in support of its decision to redact or withhold certain documents requested by Hale.[6] Exemption 2 permits the government to withhold information that is "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Exemption 7(C) permits the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(7)(C). Exemption

---

**5.** Thus, although information obtained through FOIA might be useful in a civil or criminal trial, FOIA is not a substitute for discovery or a basis for enlarging discovery rights. *See John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 153, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989); *Baldrige v. Shapiro*, 455 U.S. 345, 360 n. 14, 102 S.Ct. 1103, 1112 n. 14, 71 L.Ed.2d 199 (1982); *United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977). Of course, "[t]his is not to suggest that [the requester's] rights are in any way diminished by its being a private litigant, but neither are

they enhanced by [the requester's] particular, litigation-generated need for these materials." *National Labor Relations Board v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 n. 23, 98 S.Ct. 2311, 2327 n. 23, 57 L.Ed.2d 159 (1978).

**6.** For the sake of simplicity, we refer to these exemptions hereinafter as Exemption 2, Exemption 7(C), Exemption 7(D), and Exemption 7(E) respectively.

7(D) permits the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source ... [and] information furnished by a confidential source" in the course of a criminal investigation. 5 U.S.C. § 522(b)(7)(D). Finally, Exemption 7(E) permits the government to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). These exemptions are to be construed narrowly. *Anderson*, 907 F.2d at 941.

2. Exemption 7(D)

■ We first turn our attention to 5 U.S.C. § 552(b)(7)(D), which exempts

> records or information compiled for law enforcement purposes, but only to the extent that the production of such [materials] could reasonably be expected to disclose the identity of a confidential source, ... and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation ..., information furnished by a confidential source.

Thus, in order to invoke Exemption 7(D), the government must prove (1) "that sources of information are confidential" and (2) "that the information was acquired under an express assurance of confidentiality or that the circumstances were such that an assurance of confidentiality could be inferred." *KTVY–TV*, 919 F.2d at 1470 (citations omitted).

Exemption 7(D) differs from certain other FOIA exemptions in an important respect: " 'its applicability depends not on the specific factual contents of a particular document,' " but rather upon " 'whether the information at issue was furnished by a "confidential source" during the course of a legitimate criminal law investigation.' " *Johnson*, 739 F.2d at 1517 (citation omitted). Thus, no balancing is involved; all of the information obtained from a confidential source is automatically protected. *Id.; accord KTVY–TV*, 919 F.2d at 1470. *See generally* James O. Pearson, Jr., Annotation, *What Constitutes "Confidential Source" Within Freedom of Information Act Exemption Permitting Nondisclosure of Identity of Confidential Source and, in Specified Instances, of Confidential Information Furnished Only by Confidential Source (5 USCS § 552(b)(7)(D))*, 59 A.L.R.Fed. 550 (1982). The term "confidential source" has been defined broadly to include both individuals and institutions. *Lesar v. United States Dep't of Justice*, 636 F.2d 472, 489 (D.C.Cir.1980).

■ In the Tenth Circuit, promises of confidentiality are inherently implicit in FBI interviews conducted pursuant to a criminal investigation unless the record reveals that it would be unreasonable to make this assumption in a particular situation. *Johnson*, 739 F.2d at 1517–18; *accord Brant Constr. Co. v. United States E.P.A.*, 778 F.2d 1258, 1263 (7th Cir.1985). This policy serves two functions: (1) it protects the individual being interviewed from harassment and invasion of privacy and (2) it ensures the continuing efficacy of investigations by diminishing the likelihood of retaliation against sources and informants.

■ The government relied upon Exemption 7(D), sometimes in conjunction with Exemption 7(C), to withhold information regarding interviewees who received an implied guarantee of confidentiality; information obtained from, or which would identify, non-federal law enforcement employees, Oklahoma municipal employees, and commercial or financial institutions; and material concerning a confidential source of information.

Our *in camera* examination of the documents in dispute leads us to agree with the district court that the presumption of confidentiality should apply in this case because confidential sources were involved

and the circumstances were such that an assurance of confidentiality could be inferred. Our review of the documents leads us to conclude that Exemption 7(D) was properly asserted.[7] Accordingly, the district court appropriately granted summary judgment as to this exemption.

### 3. Exemption 7(C)

■ Exemption 7(C), together with Exemption 7(D), reflects Congress' desire to preserve confidentiality and personal privacy. *Miller v. Bell,* 661 F.2d 623, 626 (7th Cir.1981), *cert. denied,* 456 U.S. 960, 102 S.Ct. 2035, 72 L.Ed.2d 484 (1982). 5 U.S.C. § 552(b)(7)(C) of FOIA exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such [materials] could reasonably be expected to constitute an *unwarranted* invasion of personal privacy." (Emphasis added). Thus, this exemption is applicable only if the invasion of privacy that would result from release of the information outweighs the public interest in disclosure. *Reporters Committee,* 489 U.S. at 762, 109 S.Ct. at 1475; *Burge v. Eastburn,* 934 F.2d 577, 579 (5th Cir.1991); *KTVY–TV,* 919 F.2d at 1469. *See generally* James O. Pearson, Jr., Annotation, *What Constitutes "Unwarranted Invasion of Personal Privacy" for Purposes of Law Enforcement Investigatory Records Exemption of Freedom of Information Act (5 USCS § 552(b)(7)(C)),* 52 A.L.R.Fed. 181 (1981).

The government relied upon Exemption 7(C) to withhold the identities of interviewees; information about third parties (for example, associates or acquaintances of the subject of the investigation who might have been of interest to the FBI in this or unrelated matters); the identities of FBI employees, non-federal law enforcement personnel, Oklahoma municipal employees, and institutional sources (communication companies and financial corporations); and photographs of Perry. The district court

concluded that Exemption 7(C) was properly invoked to protect the privacy interests of the individuals connected with this criminal investigation.

The parties agree that the documents in question are indeed records compiled during the investigation that resulted in Hale's conviction. They disagree, however, as to whether the invasion of privacy that would result from disclosure outweighs the public interest in disclosure.

■ Although the government bears the burden of justifying its decision to withhold the material in dispute as exempt, *see* 5 U.S.C. § 552(a)(4)(B), the person requesting the information must identify with reasonable specificity the public interest that would be served by release. *See King v. United States Dep't of Justice,* 830 F.2d 210, 234 (D.C.Cir.1987); *Senate of Puerto Rico v. United States Dep't of Justice,* 823 F.2d 574, 588 (D.C.Cir.1987). The amount of support required will necessarily vary with the situation in recognition of the fact that it may sometimes be difficult to offer affirmative proof of the public importance of documents *before* knowing the contents of the documents requested. Generic platitudes clearly are not enough, however. *See Kimberlin v. Department of Treasury,* 774 F.2d 204, 208 (7th Cir.1985) ("The record fails to reflect any benefit which would accrue to the public from disclosure of this document and [the requester's] self-serving assertions of government wrongdoing and coverup do not rise to the level of justifying disclosure.").

Nor may the public interest be articulated so broadly that it would encompass each and every FOIA request. *See Miller,* 661 F.2d at 630 (asserted public interest that requester "would use the information to serve as a watchdog over the adequacy and completeness of an FBI investigation ... would apparently apply to every FBI criminal investigation, severely vitiating the privacy and confidentiality provisions

---

**7.** We note that Hale is already in possession of one of the documents that was withheld pursuant to Exemptions 7(D) and 7(C)—namely, the FBI account of an interview with a friend of Mayo Bates. Indeed, Hale attached a copy of this document to his petition in the Oklahoma Court of Criminal Appeals. *See* R., Vol. I, Doc. 25. We need not decide whether the earlier disclosure of this document destroys its confidential nature so as to require release.

of exemptions 7(C) and (D)"); *id.* at 631 (no public interest exists where requester merely hopes to obtain information that will aid him in litigation; "Were this the test for determining the existence of a public interest, every FOIA claimant against the FBI could override the exemption of § 7(C) by the simple expedient of claiming that he hoped to uncover violations of constitutional or statutory rights. Such a test is rife with the potential for abuse, and does not comport with the protective legislative intent embodied in the exemptions of section seven of the FOIA."); *cf. Connick v. Myers,* 461 U.S. 138, 149, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983) ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark— and certainly every criticism directed at a public official—would plant the seed of a constitutional case.").

■ The public interest must relate to the disclosure of governmental activity rather than the disclosure of information on private conduct that happens to be located in governmental files. The weight of the public interest often will be influenced by the degree to which the governmental conduct has general applicability.[8] Here, however, Hale urges that disclosure of the materials in dispute would advance the public interest in more personal respects.

■ First, Hale contends that he did not get a fair trial and that the people of the State of Oklahoma have an interest in the soundness of death sentences that are to be carried out in their name. However, public interest in the fairness of a *particular* trial is not the kind of public interest that compels disclosure under FOIA. *See Burge,* 934 F.2d at 580; *see also Antonelli v. Federal Bureau of Investigation,* 721 F.2d 615, 619 (7th Cir.1983) ("The contention that 'the public shares [the requester's] interest in ensuring that his convic-

tions were not obtained as a result of a violation of the Constitution' is [an] insufficient [public interest]."), *cert. denied,* 467 U.S. 1210, 104 S.Ct. 2399, 81 L.Ed.2d 355 (1984).

Second, Hale contends that the government is knowingly concealing information regarding a participant in Perry's kidnapping and murder in order to protect him as an informant for other crimes. Although the government has wide latitude in prosecutorial discretion, the public would arguably have an interest in such conduct if Hale had advanced support for this accusation. However, Hale does not substantiate this allegation, and unsupported suspicions are not enough to justify disclosure.[9] *See Miller,* 661 F.2d at 630 ("The plaintiff's broad unsupported hints of a government coverup ... fly in the face of the substance of the disclosed documents which reveal this case as one of consequence to only one individual.").

We recognize that the documents in dispute might be of value to Hale personally. However, "[t]he identity of the requesting party has no bearing on the assessment of the public interest served by disclosure." *KTVY–TV,* 919 F.2d at 1470 (citing *Reporters Committee,* 489 U.S. at 771, 109 S.Ct. at 1480; *Burge,* 934 F.2d at 580 ("a requester's need, however significant, does not warrant disclosure in the face of a plainly applicable exemption"); *Carter v. United States Dep't of Commerce,* 830 F.2d 388, 390 n. 8 (D.C.Cir.1987) ("the public's interest in disclosure is neither lessened nor enhanced by the private purpose for which information is sought") (citation omitted). We conclude that the information Hale seeks is of little interest to the public, and we apply Exemption 7(C) accordingly.

Identities of third parties interviewed and third parties whose names surface in a criminal investigation have been recognized

---

8. We do not mean to imply that a matter of singular applicability can never be of substantial interest to the public. Such a situation may exist, for example, when high ranking offices are involved or when the asserted governmental misconduct has unique intrinsic public significance. This is not such a special case.

9. Furthermore, we reviewed the undisclosed documents in this case and found no support for that allegation.

as excludible under Exemption 7(C) in order to prevent embarrassment and harassment and to enable the FBI to gather the information it needs. *See, e.g., Burge,* 934 F.2d at 579; *KTVY–TV,* 919 F.2d at 1469; *Miller,* 661 F.2d at 631; *Lesar,* 636 F.2d at 488; *Freeman v. United States Dep't of Justice,* 723 F.Supp. 1115, 1124–25 (D.Md. 1988).

Furthermore, many circuits, including our own, have recognized that FBI agents and other federal law enforcement officials have a substantial privacy interest in concealing their identity. *See, e.g., Kuzma v. Internal Revenue Service,* 775 F.2d 66, 69 (2d Cir.1985); *Johnson,* 739 F.2d at 1518–19; *Miller,* 661 F.2d at 629–30; *Lesar,* 636 F.2d at 487; *Nix v. United States,* 572 F.2d 998, 1006 (4th Cir.1978). We see no reason why non-federal law enforcement personnel and state or municipal employees would not have a similar interest. Because our *in camera* review of the undisclosed material revealed nothing that would indicate improper conduct by the officers, we agree with the district court that no public interest exists in disclosing their identity for purposes of FOIA.

Nor can we discern any public interest in the photographs of the deceased victim, let alone one that would outweigh the personal privacy interests of the victim's family.

Because we conclude that the disclosure of the materials at issue would constitute an unwarranted invasion of personal privacy in a situation where little or no public interest is at stake, we affirm the district court's rulings with respect to Exemption 7(C).[10]

### 4. Exemption 2

■ 5 U.S.C. § 552(b)(2) exempts information that is "related solely to the internal personnel rules and practices of an agency." This exemption generally encompasses minor or trivial administrative matters of no genuine public interest and possibly more substantial matters that might be the subject of legitimate public interest *if*

the disclosure of the latter might pose a risk of circumvention of lawful agency regulations. *Department of Air Force v. Rose,* 425 U.S. 352, 365–67, 369, 96 S.Ct. 1592, 1601–02, 1603, 48 L.Ed.2d 11 (1976); *accord Founding Church of Scientology v. Smith,* 721 F.2d 828, 830 n. 4 (D.C.Cir. 1983).

The government claimed this exemption in order to delete administrative markings and notations on documents; room numbers, telephone numbers, and FBI employees' identification numbers; a checklist form used to assist special agents in consensual monitoring; personnel directories containing the names and addresses of FBI employees; and the dissemination page of Hale's "rap sheet."

After a thorough *in camera* review of the documents in dispute, we agree with the district court's conclusion that "the information withheld pursuant to 552(b)(2) was properly withheld, in that it is indeed trivial matter of no genuine public interest" and that "[f]urthermore, items which would identify FBI employees are exempt under [Exemption 7(C)]." Order, R., Vol. I, Doc. 33, at 2–3.

### 5. Exemption 7(E)

■ 5 U.S.C. § 552(b)(7)(E) exempts records or information ... compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

"The legislative history of this exemption makes clear that it is to be applied only to techniques and procedures generally unknown to the public." *Dunaway v. Webster,* 519 F.Supp. 1059, 1082 (N.D.Cal.1981) (citations omitted). However, techniques

---

**10.** As to many of the undisclosed documents, the government asserted both Exemptions 7(C) and 7(D). Either exemption would be sufficient in those cases to withhold disclosure of the documents.

and procedures may be exempt even if they are known to the public to some extent if disclosure of the circumstances of their use could lessen their effectiveness. For example, matters similar to those in dispute were held exempt in *Malloy v. United States Dep't of Justice*, 457 F.Supp. 543, 544–45 (D.D.C.1978).

The government relied upon Exemption (b)(7)(E) to withhold information regarding investigative techniques and procedures, security devices and modus operandi, and polygraph matters. The district court concluded that the exemption was properly claimed. We agree that the production of the materials at issue would disclose techniques and procedures used in law enforcement investigations or prosecutions and could reasonably be expected to risk circumvention of the law.

## CONCLUSION

For the reasons stated above, we AFFIRM the decision of the district court.