<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

<u>Filed 11/6/96</u>

**TENTH CIRCUIT**

---

ALVIE JAMES HALE, JR.,

      Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT
OF JUSTICE, and its component;
FEDERAL BUREAU OF
INVESTIGATION,

      Defendants-Appellees.

No. 95-6073

---

**Appeal from the United States District Court
for the W.D. Okla.
(D.C. No. CIV-89-1175-T)**

---

Submitted on the briefs:[*]

Scott W. Braden, Tallahassee, Florida, for Plaintiff-Appellant.

Patrick M. Ryan, United States Attorney, Oklahoma City, Oklahoma, and Michael James, Assistant United States Attorney, Oklahoma City, Oklahoma, for Defendants-Appellees.

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. <u>See</u> Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The cause therefore is ordered submitted without oral argument.

Before **TACHA**, **BRORBY**, and **EBEL**, Circuit Judges.

_____

**EBEL**, Circuit Judge.

_____

Appellant Alvie James Hale ("Hale") appeals a district court order dated January 17, 1995 granting summary judgment in favor of the United States on Hale's claims that the United States improperly withheld certain documents pursuant to 5 U.S.C. § 552 (b)(7)(D) of the Freedom of Information Act ("FOIA"). The district court's order was a final order which disposed of all claims with respect to all parties. The district court had jurisdiction pursuant to 5 U.S.C. § 552 (a)(4)(B) of the FOIA. Hale filed a notice of appeal on February 10, 1995, within sixty days of the district court's order. Fed. R. App. P. 4(a)(1). We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and remand for further proceedings consistent with this opinion.

I.

In 1983, Hale was convicted in the United States District Court for the Western District of Oklahoma under the Hobbs Act, 18 U.S.C. § 1951, for his actions in connection with the kidnaping and murder of William Jeffrey Perry. Hale v. United States Dep't of Justice, 973 F.2d 894, 896 (10th Cir. 1992) (Hale I), cert. granted and judgment vacated by, 509 U.S. 918 (1993). Hale was

- 2 -

sentenced to twenty years imprisonment.  Id.  The following year, Hale was convicted and sentenced to death by the State of Oklahoma for his role in the same crime.  Id.

In support of a collateral attack on his death sentence, Hale filed a FOIA request with the United States Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") in 1989 seeking the release of all information regarding the kidnaping and murder of William Perry.  Id. at 896-97.  The FBI withheld certain information from disclosure, claiming that the information was exempt from mandatory disclosure under several FOIA exemptions.  Hale then sought injunctive relief against the government under 5 U.S.C. § 552(a)(4)(B) in the United States District Court for the Western District of Oklahoma.  Id. at 897.  After an in camera inspection of the documents in dispute, the district court upheld all claims of exemption and granted the United States' motion for summary judgment on the grounds that the requested documents constituted information exempted from the FOIA pursuant to 5 U.S.C. §§ 552(b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  Id. at 897-98.

We affirmed the district court's ruling in Hale I.  Hale then filed a petition for writ of certiorari to the United States Supreme Court.  In a short order dated June 28, 1993, the Supreme Court granted certiorari, vacated our judgment in Hale I, and remanded the case to this court for further consideration in light of

United States Dep't of Justice v. Landano, 508 U.S. 165 (1993).  Hale v. United

States Dep't of Justice, 509 U.S. 918 (1993).  In Landano, the Supreme Court

held that under Exemption 7(D), which exempts from disclosure the identity of a

confidential government source and information provided by that source, 5 U.S.C.

§ 522(b)(7)(D), "the Government is not entitled to a presumption that a source is

confidential within the meaning of Exemption 7(D) whenever the source provides

information to the FBI in the course of a criminal investigation."  Landano, 508

U.S. at 181.[1]

On remand, we applied Landano to "modify the Tenth Circuit rule

concerning Exemption 7(D) to require a source-by-source determination of the

expectations of confidentiality."  Hale v. United States Dep't of Justice, 2 F.3d

1055, 1057 (10th Cir. 1993) (Hale II).  We instructed the district court that it

should "make findings particular to the source as to whether or not that source

'furnished [the] information with the understanding that the FBI would not

divulge the communication except to the extent the Bureau thought necessary for

---

[1]    Exemption 7(D) permits the government to withhold "records or
information compiled for law enforcement purposes, but only to the extent that
the production of such law enforcement records or information . . . could
reasonably be expected to disclose the identity of a confidential source . . . [and]
information furnished by a confidential source" in the course of a criminal
investigation.  5 U.S.C. § 522(b)(7)(D).

law enforcement purposes.'" Id. (quoting Landano, 508 U.S. at 174).[2]

Furthermore, we stated that "[i]f the district court chooses to rely on an inference of confidentiality for a particular source based upon the nature of a crime or the source's relation to the crime, the court should clearly indicate that it is relying on such an inference, and the circumstances relied upon to support such an inference should be articulated." Id. We then remanded the case to the district court for reconsideration of the United States' claimed exemption based on Exemption 7(D). Id. at 1058.

On remand from this court the FBI provided Hale and the district court with a new Vaughn affidavit, see Vaughn v. Rosen, 484 F.2d 820, 826-28 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974), which explained the review procedures used by the FBI and addressed the Exemption 7(D) issues in light of Landano. R.O.A. Doc. 59. Following the FBI's review under Landano, 872 of 901 pages reviewed were released to Hale. District court order at 2. The United States subsequently released an additional 154 pages which were not initially provided due to a computer problem. The United States also provided the district court with a complete set of the documents for in camera review. After reviewing the

_____

[2]     Prior to Landano, we interpreted Exemption 7(D) as permitting a presumption that promises of confidentiality are implicit in FBI interviews conducted as part of a criminal investigation. Johnson v. United States Dep't of Justice, 739 F.2d 1514, 1517-18 (10th Cir. 1984). In Hale II, we modified that rule because of Landano.

- 5 -

documents provided, on January 17, 1995, the district court granted summary

judgment in favor of the United States, holding that the United States had

satisfied its burden with respect to its claims of exemption pursuant to Exemption

7(D).[3]  Hale now appeals.

## II.

"[W]here the district court has granted summary judgment in favor of the

government agency, we must review de novo the district court's legal conclusions

that the requested materials are covered by the relevant FOIA exemptions."

Anderson v. Dep't of Health and Human Servs., 907 F.2d 936, 942 (10th Cir.

1990);  see also Hale I, 973 F.2d at 897 (declining the government's invitation to

adopt a clearly erroneous standard).  The standards governing our de novo review

of the record are the same as those which would be applied by the district court in

making its initial ruling.  See United States v. Frederick, 897 F.2d 490, 491 (10th

Cir.), cert. denied, 498 U.S. 863 (1990).  As part of our de novo review of the

district court's decision, we have conducted an in camera inspection of the

---

[3]     The United States continues to withhold certain requested materials on the grounds that other exemptions to the FOIA apply.  The district court's prior determination that these materials were properly withheld on other FOIA grounds was affirmed on appeal by this court in Hale I, and those claims of exemption are no longer at issue.  The only FOIA exemption at issue here is Exemption 7(D).

documents in dispute.[4]  In so doing, we recognize that, because this is an appeal

from a grant of summary judgment in favor of the government, we must examine

the record and reasonable inferences therefrom in the light most favorable to

Hale.  See Anderson, 907 F.2d at 946-47; Hale I, 973 F.2d at 897.

---

[4]       The United States argues that our de novo review need not include an
in camera review of the documents in dispute.  The United States contends that
(1) § 552(a)(4)(B) of the FOIA, which provides for in camera review of
documents requested pursuant to the FOIA, contemplates an in camera review by
the district court, 5 U.S.C. § 552(a)(4)(B) ("On complaint, the district court . . .
has jurisdiction to enjoin the agency from withholding agency records and . . .
may examine the contents of such agency records in camera . . . ."), and (2) in
camera review is the exception and not the rule, see National Labor Relations
Board v. Robbins Tire & Rubber Co., 437 U.S. 214, 224 (1978) ("The in camera
review provision is discretionary by its terms, and is designed to be invoked when
the issue before the district court could not be otherwise resolved . . . .").
        We conclude that, although an in camera review is not always required,
nothing precludes us on appeal from exercising our discretion to review the
disputed documents in camera.  In this case, the district court's conclusions were
based on an in camera review of the documents and the court's ultimate findings,
as reflected in its order, were inadequate and provide an insufficient basis upon
which to predicate our review.  Under these circumstances in camera review at the
appellate level is appropriate.  See Oliva v. United States Dep't of Justice, 996
F.2d 1475, 1476 (2d Cir. 1993) (conducting an in camera review on appeal where
the district court had made findings based on in camera review and the findings
were challenged on appeal); Lame v. United States Dep't of Justice, 767 F.2d 66,
71-72 (3d Cir. 1985) (conducting an in camera review at the appellate level as
part of its "plenary review of the district court's decision on the legal issues"
where the district court had conducted an in camera review); see also 1 James T.
O'Reilly, Federal Information Disclosure §  8.35, at 8-110, 8-111 n.676 (2d ed.
1995) ("The appeals court may choose to conduct in camera review of the
disputed documents if it wishes," and although "such power is not explicitly
found in 5 U.S.C. § 552(a)(4)(B), an appellate court would readily assume that the
power is part of its 'judicious blend' of available remedial tools.").  We see no
obstacle to our doing so on this appeal.

Exemption 7(D) permits the United States to withhold

> records or information compiled for law enforcement purposes, but only to the extent that the production of such [material] could reasonably be expected to disclose the identity of a confidential source, . . . and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . ., information furnished by a confidential source.

5 U.S.C. § 552(b)(7)(D). We have stated that "in order to invoke Exemption 7(D), the government must prove (1) that sources of information are confidential and (2) that the information was acquired under an express assurance of confidentiality or that the circumstances were such that an assurance of confidentiality could be inferred." Hale I, 973 F.2d at 899 (citations omitted). The term "source" is defined broadly to include both individual and institutional sources of information. Lesar v. United States Dep't of Justice, 636 F.2d 472, 489 (D.C. Cir. 1980). In protecting the identity of a source, Exemption 7(D) also covers information which would "tend to reveal" a source's identity. Pollard v. F.B.I., 705 F.2d 1151, 1155 (9th Cir. 1983).

The Supreme Court in Landano held that the government is not entitled to a general presumption that sources supplying information to the FBI in the course of a criminal investigation are confidential sources within the meaning of Exemption 7(D). Landano, 508 U.S. at 181. Rather, in order for a source to be deemed confidential under Exemption 7(D), the government must establish on a

source-by-source basis that the source furnished information with an understanding that the communication would not be revealed except as necessary for law enforcement purposes. Id. at 174. "Under Exemption 7(D), the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential." Id. at 172 (emphasis in the original).

An agreement of confidentiality may be either express or implied. Express agreements are fairly straightforward and merely require the courts to determine, as a matter of fact, whether an express agreement of confidentiality had been entered into between the government and the source. We have reviewed those documents where the government has claimed an express agreement of confidentiality by designating withheld material with the Code (b)(7)(D)-7, and we affirm the district court's holding that materials deleted under Code (b)(7)(D)-7 were properly withheld to protect a confidential source. See Rosenfeld v. United States Dep't. of Justice, 57 F.3d 803, 814 (9th Cir. 1995) ("Landano did not affect the application of exemption 7(D) to sources and information covered by an express assurance of confidentiality."), cert. dismissed, 116 S. Ct. 833 (1996).

Turning then to implied confidentiality, we are mindful that an inference of implied confidentiality should be evaluated on a case-by-case basis. See Landano, 508 U.S. 179-80 (requiring a "more particularized approach" to determining whether the inference of an implied promise of confidentiality is appropriate). The Court in Landano stated that, "[a]lthough we have determined that it is unreasonable to infer that all FBI criminal investigative sources are confidential, we expect that the Government often can point to more narrowly defined circumstances that will support the inference." Id. at 179. In describing some "generic circumstances in which an implied assurance of confidentiality fairly can be inferred," id. at 179, the Court identified two relevant factors for courts to consider, (1) the nature of the crime investigated, and (2) the source's relation to it, id. at 179, 181. The Court suggested, as examples not intended to be exclusive, that paid informants and witnesses to violent gang-related crimes may support a presumption of confidentiality. Id. at 179-80 (citing with approval several Circuit Court decisions where the inference of confidentiality was based upon circumstances where there was a strong possibility that the source would suffer reprisal); see also KTVY-TV v. United States, 919 F.2d 1465, 1470 (10th Cir. 1990). Under Landano, "courts may look to the risks an informant might face were her identity disclosed, such as retaliation, reprisal or harassment, in inferring confidentiality." Massey v. F.B.I., 3 F.3d 620, 623 (2d Cir. 1993).

- 10 -

When relying on an inference of confidentiality, the government's <u>Vaughn</u> index and affidavits, as well as the district court's findings, should provide sufficient detail on a source-by-source basis to support an assertion of implied confidentiality.[5]  <u>See</u> <u>Church of Scientology Int'l v. United States Dep't of Justice</u>, 30 F.3d 224, 238 (1st Cir. 1994).  "Armed with this information, the requester will have a more realistic opportunity to develop an argument that the circumstances do not support an inference of confidentiality."  <u>Landano</u>, 508 U.S. at 180.[6]

When reviewing the "nature of the crime" to see if it supports an inference of confidentiality, we must be careful to follow the admonition in <u>Landano</u> not to cast the net so widely as to give rise to an inference of confidentiality in all cases.

---

[5]    In conducting the source-by-source review, we must look to the circumstances at the time the communication was made to the FBI.  <u>See</u> <u>Landano</u>, 508 U.S. at 172.  ("Under Exemption 7(D), the question is . . . whether the particular <u>source</u> spoke with the understanding that the communication would remain confidential."(emphasis in original))

[6]    The government "need not provide so much detail that the confidentiality is destroyed."  <u>Church of Scientology</u>, 30 F.3d at 239 n.23.  However, where it cannot provide adequate detail without jeopardizing confidentiality it should explain why that is the situation.  <u>Id.</u>  "To the extent that the Government's proof may compromise legitimate interests, of course, the Government still can attempt to meet its burden with <u>in camera</u> affidavits," <u>Landano</u>, 508 U.S. at 180, and as noted above, the court may review the disputed materials themselves <u>in camera</u>.  Finally, "[i]f the court's analysis requires reference to in camera affidavits, or other confidential evidence, that portion of the district court analysis may be provided in a separate confidential addendum that may be revealed to a party or the public only upon order of the district court or a reviewing court."  <u>Hale II</u>, 2 F.3d at 1057.

All crime, of course, has the potential to be intimidating and to engender anxiety in those who testify about it. However, in the absence of an express agreement of confidentiality, the "nature of the crime" will ordinarily support an inference of confidentiality only when there are discrete aspects of the crime that make it particularly likely that a source reasonably would fear reprisal. Examples include (1) a gang-related crime of violence, Landano, 508 U.S. at 179; (2) a crime taking place within some other potentially violent organizational context, as for example a cult or an extremist group, Williams v. F.B.I., 69 F.3d 1155, 1159 (D.C. Cir. 1995) (extremist group which demonstrated a willingness to use violence against its enemies); (3) a series of repetitive premeditated crimes of violence; (4) unusually cruel or gruesome crimes of violence indicating a propensity on behalf of the perpetrator for potential violence against the source; or (5) circumstances involving actual threats of retaliation or harassment against the source or others similarly situated, see Davin v. United States Dep't of Justice, 60 F.3d 1043, 1063 (3d Cir. 1995). The fact that a crime is violent, standing alone, is not dispositive because much, if not most, crime is either violent or has the potential for violence. If that fact alone were sufficient to give rise to an inference that sources would not voluntarily speak to government investigators except on condition of confidentiality, we would be close to returning to a generalized inference of confidentiality for all FBI interviews conducted as part of a criminal

investigation. As noted earlier, that used to be Tenth Circuit law, but that position was repudiated by the United States Supreme Court in <u>Landano</u>. <u>See Hale II</u>.

Here, we have a violent crime involving kidnaping and murder. Further, it took place in a small Oklahoma town where apparently most everyone knew everyone else, and thus the interviewees would likely be known to any involved individuals. In addition, the nature of the crime was such that at the time of the interviews, it could not be known whether the crime was the act of a single individual or the concerted act of several individuals. On the other hand, there was no allegation by the government nor evidence of a public perception at the time of the interviews that this crime involved an organization such as a gang or extremist group with a persistent existence and propensity for violence. Nor is there any evidence that there were threats of retaliations issued against actual or potential sources. The crime was a single, discrete crime with an apparent economic motive. Thus, considerations related to the nature of the crime cut in both directions as to the likelihood that the interviewees expected anonymity when talking to law enforcement personnel.

With respect to the source's relation to the crime, we ask whether there is something unique to a particular source that would reasonably make that source feel particularly at risk of retribution for providing information to the FBI over

- 13 -

and above the generalized apprehension that every citizen must experience when providing information to the FBI pertinent to criminal activity. For example, an inside informant would reasonably have a greater expectation of confidentiality than someone who is merely providing business records after the fact that might enable the FBI to link a suspect to a crime. Examples of sources who might have a heightened reason to expect that their identities and information will be kept confidential by the FBI unless used at trial include the following: (1) a person in close relationship to the defendant (e.g., a member of the defendant's family or associate of the defendant), with a reason to fear retaliation or harassment, Ferguson v. F.B.I., 83 F.3d 41, 43 (2d Cir. 1996); (2) a person who was involved in the underlying events (e.g., a confidential informant or snitch), Landano, 508 U.S. at 179; (3) a prisoner or prison guard; or (4) a state, local, or a foreign law enforcement agency, to the extent that the information provided came from that agency's confidential sources, Ferguson, 83 F.3d at 43. Of course, because each situation must be evaluated on its own facts, this is neither intended to be an exclusive list of situations where confidentiality may be inferred nor is it intended that confidentiality will always be inferred when one of these situations is present. See Quinon v. F.B.I., 86 F.3d 1222, 1322 (D.C. Cir. 1996) ("The mere fact that a source may have some social or business association with the subject

of a federal criminal investigation falls short of the particularity mandated by Landano.").

Institutional sources may also assert implied agreements of confidentiality, but Landano cautions us again to require specificity to uphold a claim of confidentiality for institutions. See Landano, 508 U.S. at 176 ("The justifications offered for presuming the confidentiality of all institutional sources are less persuasive. . . . The Government does suggest that private institutions might be subject to `possible legal action or loss of business' if their cooperation with the Bureau became publicly known. . . . But the suggestion is conclusory. Given the wide variety of information that such institutions may be asked to provide, we do not think it reasonable to infer that information is given with an implied understanding of confidentiality in all cases."). With institutions, one might consider whether it is a regulated institution that could be expected to be required to provide information to various governmental entities, whether the information was kept in the ordinary course of business, and the nature of the ramifications feared by the institution if its identity as a source of information were disclosed.

## III.

In reviewing the actual documents withheld in this case, we are once again hampered by the failure of the district court to conduct a "source-by-source"

- 15 -

analysis of the documents as to which the government is asserting implied confidentiality, Hale II, at 1057. Instead, the district court focused on the nature of the crime, and apparently assumed that was sufficient to imply confidentiality as to all the documents withheld. As noted earlier in this opinion, we reject that conclusion. What few references that the district court did make regarding the source's relationship to the crime were so generic that they provide us with no basis for reviewing whether an implied understanding of confidentiality is reasonable to assume as to any particular source. E.g., district court order at 6. ("[W]itnesses or sources of information could reasonably expect to have fear of retaliation and would logically have a fear of death or bodily harm as a consequence of their cooperation with a law enforcement agency."). The district court also referred to a subcategory of documents reflecting communications involving "commercial or financial institutions." Id. at 4. However, once again the court did not provide any particularized findings to support the government's claim of confidentiality. The court merely stated that these documents were properly withheld since "[b]y its nature, the release of the information would necessitate the identification of the source." Id. at 4-5.[7] The question, however,

_____

[7]     The district court set forth the following relevant findings of fact:

[T]he victim of the kidnaping for which [Hale] was convicted was a bank officer and his parents were bank officers and the major

(continued...)

- 16 -

is not whether release of the information will reveal the source, but rather whether there was an implied agreement of confidentiality given when the source provided the information to the government investigators.

Our in camera review of the documents in dispute and our review of the United States' Vaughn affidavit,[8] do not enable us to determine, with any degree of confidence, whether the government appropriately or inappropriately claimed a 7(D) exemption pursuant to implied confidentiality as to the various sources. We have identified several sources where implied confidentiality might be justified based on a source's relationship with Hale. However, in at least one situation the confidential source has already been identified by the government to Hale, and it is not at all evident why certain portions of the information from that source has been deleted and other portions produced. We are also unpersuaded from the Vaughn affidavit that the government has established an adequate justification to

---

[7](...continued)
stockholders of the bank. Bank funds were also utilized to pay ransom money. Employees of financial institutions provided information from bank records, and the source of the information knew that the material provided was confidential and available to only a few persons.

District court order at 4-5.

[8]     We discuss here only that information withheld solely on the basis of Exemption 7(D). We do not consider any information which was also withheld pursuant to another exemption because these other exemptions have already been evaluated and affirmed by this court. See supra n.3.

withhold information from commercial and financial sources as referenced in paragraph 37 of the <u>Vaughn</u> affidavit. Other sources that have been deleted lack any particularized justification to support a conclusion that the source provided information under an implied agreement of confidentiality.

Therefore, we must once again remand this case for further proceedings. As to each source whose identity has not been disclosed and as to each category of material deleted from a source whose identity has been disclosed, the district court is requested to make explicit findings, consistent with this opinion, explaining why such deletions are or are not justified under Exemption 7(D). Any such justification will have to be grounded upon the source's relation to Hale or the crime rather than solely upon the nature of the crime alone. And, a mere relationship with Hale or the crime will not automatically support a 7(D) exemption unless a finding is made explaining why that source would reasonably expect that the information provided would be kept confidential notwithstanding the failure of the source to request or receive an express promise of confidentiality.

We recognize that this further inquiry may require a further <u>in camera</u> submission by the government, and it may require a portion or all of the district court's order to be filed under seal and not disclosed to the parties or the public. However, unless the government is truly put to its proof under the <u>Landano</u>

standard and unless the district court is required to address the claimed implied confidentiality on a source-by-source basis, we have no realistic way of reviewing the claimed 7(D) exemptions and Hale is left without a real mechanism to have the government's claim of exemption challenged.

IV.

Based upon the foregoing discussion, we **AFFIRM** the district court's ruling upholding the government's claims of exemption on the basis of express confidentiality agreements; we **REVERSE** the district court's rulings as to implied agreements of confidentiality; and we **REMAND** this matter to the district court for further proceedings consistent with this opinion.