**UNITED TECHNOLOGIES CORPORATION, by its division PRATT & WHITNEY,**

v.

**FEDERAL AVIATION ADMINISTRATION, Defendant-Appellee.**

**No. 278, Docket 96–6076.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1996.

Decided Dec. 23, 1996.

Charles J. Cooper, Washington, DC (J.E. Murdock III, Vincent J. Colatriano, Shaw, Pittman, Potts & Trowbridge, Washington, DC, on the brief), for plaintiff-appellant.

William A. Collier, Asst. U.S. Atty., Hartford, Conn. (Christopher F. Droney, U.S. Atty., New Haven, CT, John M. Walsh, Fed. Aviation Admin., Washington, DC, on the brief), for defendant-appellee.

Before: NEWMAN, Chief Judge, LEVAL, Circuit Judge, and OBERDORFER, District Judge.*

OBERDORFER, District Judge.

This appeal presents the unusual question of whether the "confidential information" exemption to the Freedom of Information Act

---

* The Honorable Louis F. Oberdorfer, of the United States District Court for the District of Columbia, sitting by designation.

("FOIA") applies where the FOIA requester already has access through other sources to the allegedly confidential information. Appellant United Technologies Corp., by its division Pratt & Whitney ("Pratt & Whitney" or "P & W") appeals from the February 5, 1996, judgment of the United States District Court for the District of Connecticut (T.F. Gilroy Daly, Judge). The District Court held that the exemption applied, and granted summary judgment in favor of appellee Federal Aviation Administration ("FAA"). Pratt & Whitney contends that the District Court erred in refusing to consider the individuating circumstance in this case that Pratt & Whitney already has knowledge of the confidential information contained in the withheld documents.

We believe that the individuating circumstances of a third-party FOIA requester are irrelevant here, and therefore affirm the judgment of the District Court.

### Background

### I.

Pratt & Whitney is a corporation engaged in the business of designing, manufacturing, and selling aircraft engines and replacement parts. Pursuant to the Federal Aviation Act of 1958, before an aircraft engine may be used in civil aviation, its design must be approved by the FAA. The manufacturer must submit detailed drawings, designs, and specifications relating to the aircraft engine and its component parts. These specifications are not made available to the general public and are considered the proprietary information of the manufacturer. Upon approval of the engine, the FAA issues a "type certificate" to the manufacturer. *See* 49 U.S.C.App. § 44704 (1994).

The FAA has also instituted a regulatory scheme governing the manufacture and sale of replacement parts. Any person, in addition to the manufacturer, may apply to the FAA for a Parts Manufacturer Approval ("PMA"), which allows the holder to manufacture and sell specific replacement parts directly to the owners of aircraft engines. One method of obtaining a PMA is to demonstrate that "the design of the [replacement] part is identical to the design of a[n original] part ... covered under a type certificate." *See* 14 C.F.R. § 21.303(c)(4) (1996). A PMA issued through this method is known as an "identicality" PMA. Identicality, however, does not require that the specifications for a replacement part be exactly the same as those for the original part. Rather, identicality requires only:

> that the FAA has determined from a comparison of the two sets of data and drawings, and any other data it finds relevant, that the PMA part will be an adequate replacement for the original part as to fit, form, and function.

### II.

This lawsuit arose in late 1991 when Pratt & Whitney came to believe that the FAA was issuing a large number of identicality PMAs for replacement parts in P & W engines. Pratt & Whitney claims that it had further reason to believe that certain PMA applicants were improperly obtaining PMAs by using P & W proprietary information. Subsequently, Pratt & Whitney submitted a FOIA request to the FAA, seeking the administrative record regarding the issuance of PMAs to two companies, Pyromet Industries ("Pyromet") and Turbine Kinetics ("TK").

Both Pyromet and TK had sought and received identicality PMAs for replacement parts in P & W engines. The FAA, in response to Pratt & Whitney's FOIA request, disclosed approximately 200 pages of documents in their entirety. Another eleven pages of documents were withheld in part, and approximately forty-seven pages of documents were withheld completely. Of those documents withheld, the most important are the ones containing the Pyromet and TK design drawings. The FAA invoked FOIA Exemption 4, which exempts from disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." *See* 5 U.S.C. § 552(b)(4) (1994).

Pratt & Whitney objected to the FAA's withholding of those documents and sought administrative recourse. On administrative appeal, the FAA reiterated its earlier decision that the documents submitted by Pyro-

met and TK contained confidential information. With respect to the Pyromet design drawings, although Pratt & Whitney argued that any information submitted by a PMA applicant under the identicality provision must be, by definition, non-confidential to the holder of the type certificate, the FAA responded:

> We are not able to resolve competing claims of property rights. We accept at face value any submitter's claim that it has a protectable proprietary interest in data it submits to the FAA so long as the data appears on its face to be proprietary to the submitter and nothing in our records indicates that the information is not normally held confidential to the submitter.... That is the case with the Pyromet drawings. You offer nothing by way of argument as to why documents that are *prima facie* proprietary to other companies should be released to a FOIA requester.

The FAA provided a similar rationale for its withholding of the TK design drawings.

In June 1993, Pratt & Whitney filed suit in the District of Connecticut to compel the FAA to disclose the withheld documents. After the District Court referred the case to a magistrate judge, both parties moved for summary judgment. In November 1995, the magistrate judge issued a Recommended Ruling in favor of the FAA. He first concluded that Pratt & Whitney did not have any special right of access. In doing so, he rejected Pratt & Whitney's argument that its request should be treated differently from those of all other FOIA requesters because it already had knowledge of the confidential information. Secondly, the magistrate judge determined that the withheld documents were "confidential" within the meaning of Exemption 4, since their disclosure would cause substantial harm to the competitive positions of Pyromet and TK.

On February 5, 1996, the District Court adopted the Recommended Ruling of the magistrate judge and entered judgment in favor of the FAA. Pratt & Whitney now appeals.

### Discussion

■ Pratt & Whitney contends that, since the documents in this case were submitted to the FAA under the identicality provision, Pratt & Whitney already has, by the very nature of that provision, access to any supposedly confidential information contained in the withheld documents. At oral argument, however, there was some discussion as to whether the Pyromet and TK design drawings were in fact identical to the P & W design drawings. For example, under the identicality provision, 14 C.F.R. § 21.303(c)(4), only the "design" of the replacement part need be identical to the "design" of the original part. Thus, the drawings used to portray that design might be substantially different, and conceivably, the manner in which Pyromet and TK render their design drawings could divulge proprietary information about their "reverse engineering" techniques.[1]

In any event, the FAA conceded at oral argument that it is willing to assume that the design drawings submitted by Pyromet and TK are identical in all respects to the drawings contained in the type certificates held by Pratt & Whitney. Therefore, for the purpose of this appeal, we will hypothesize that the Pyromet and TK design drawings are functionally indistinguishable from the P & W design drawings. Proceeding from that assumption, then, Pratt & Whitney argues that the information contained in the Pyromet and TK design drawings cannot be "confidential" *as to Pratt & Whitney* within the meaning of FOIA Exemption 4.

■ Pratt & Whitney, however, misconstrues the scope of that provision. Exemption 4 covers information that is not merely confidential as to the requester, but confidential as to the general public. It is a basic principle under FOIA that the individuating circumstances of a requester are not to be considered in deciding whether a particular document should be disclosed. All requesters are considered to have equal rights of access. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n. 10, 95 S.Ct. 1504, 1513 n.

---

**1.** Reverse engineering is the process by which an engineer takes an already existing product and works backwards to re-create its design and/or manufacturing process.

10, 44 L.Ed.2d 29 (1975). "[A FOIA requester's] rights under the Act are neither increased nor decreased by reason of the fact that it claims an interest in the [withheld documents] greater than that shared by the average member of the public." *Id.* As Professor Davis explained, "The Act's sole concern is with what must be made public or not made public." Kenneth Culp Davis, The Information Act: A Preliminary Analysis, 34 U. Chi. L.Rev. 761, 765 (1967).[2] Therefore, the circumstance that Pratt & Whitney already has knowledge of the information contained in the withheld documents is irrelevant. The proper inquiry is not whether the documents are confidential as to Pratt & Whitney, but whether they are confidential in general.

Pratt & Whitney "freely concedes" that it cannot prevail if it must proceed under FOIA Exemption 4 as if it were any other member of the general public. *See* Appellant's Br. at 23. Pratt & Whitney, however, relies on the Supreme Court's decision in *United States Department of Justice v. Julian,* 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988), for the proposition that confidentiality under Exemption 4 should be examined on a requester-specific basis. In *Julian,* the Supreme Court crafted a narrow exception to the general rule that all individuals should have equal rights of access under FOIA. The plaintiffs in *Julian* were prisoners who sought disclosure of their own presentence investigation reports ("PSIs"). The Government responded by arguing that the PSIs were protected under Exemption 5, which prohibits disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party ... in litigation with the agency." *See* 5 U.S.C. § 552(b)(5) (1994). Since the PSIs were normally privileged from civil discovery, therefore, according to the Government, Exemption 5 prohibited their disclosure under FOIA.

The Supreme Court began its analysis in *Julian* by noting that "in both civil and criminal cases the courts have been very reluctant to give *third parties* access to the presentence investigation report prepared for some other individual or individuals." *Julian,* 486 U.S. at 12, 108 S.Ct. at 1613 (emphasis in original). Such refusals were based on the rationale that PSIs are normally not discoverable. The Supreme Court believed that a different rule, however, was appropriate "when the individual requesting discovery is the *subject* of the report." *Id.* (emphasis added). In that situation, the discovery privilege would not be applicable. Thus, the Supreme Court found "good reason to differentiate between a government claim of privilege ... when a third party is making the request and such a claim when the request is made by the subject of the report." *Id.* at 14, 108 S.Ct. at 1614.

Pratt & Whitney cites *Julian* as an example where the Supreme Court has departed from its previously strict rule that the identity of the requester is irrelevant to a FOIA request, *see Julian,* 486 U.S. at 15, 17–20, 108 S.Ct. at 1614–15, 1615–17 (Scalia, J., dissenting). Even so, however, nothing in *Julian* supports the claim raised by Pratt & Whitney that confidentiality under Exemption 4 should be considered on a requester-specific basis in all cases. At most, the Court in *Julian* differentiated between a requester who is the "subject" of the documents and all other "third-party" requesters. Since only the former group of individuals would have any claim of special access under *Julian,* Pratt & Whitney, which falls into the latter group, cannot benefit from that decision.

The Supreme Court has subsequently explained its holding in *Julian* and reiterated the basic principle that all third-party requesters are to be considered equally under FOIA. *See United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989). In *Reporters Committee,* the Supreme Court emphasized its original view that "Congress 'clearly intended' the FOIA 'to give any member of the public as much right to disclosure as one with a special interest [in a particular document].'" *Id.* at 771, 109 S.Ct. at 1481 (quoting *NLRB v. Sears, Roebuck & Co.,* 421 U.S. at 149, 95

---

**2.** Professor Davis argues persuasively that the text of the statute and its legislative history uniformly support the FOIA principle of equal access. Davis, *supra,* at 765–66.

S.Ct. at 1515); *see also id.* at 772, 109 S.Ct. at 1481 (whether a document must be disclosed "turn[s] on the nature of the *requested document* and its relationship to the basic purpose of the Freedom of Information Act ....") (emphasis added). The Supreme Court also explained that *Julian* applies only where the Government's "objection to disclosure is based on a claim of privilege and the person requesting disclosure is the party protected by the privilege...." *Id.* at 771, 109 S.Ct. at 1480–81. In all other cases, "the identity of the requesting party has no bearing on the merits of his or her FOIA request." *Id.*

Since Pratt & Whitney is not the party for whom the protections of Exemption 4 were intended, it has no claim of special access. *See Reporters Committee,* 489 U.S. at 771, 109 S.Ct. at 1480–81; *see also Schiffer v. FBI,* 78 F.3d 1405, 1410–11 (9th Cir.1996) (fact that requester knew "much of the information" contained in requested documents did not support claim of special access). If any party has such a claim, it would be *only* Pyromet or TK.[3]

 Additionally, our view of Exemption 4 accords with the established test for determining whether a document is "confidential" under the exemption. The seminal case in this regard is *National Parks & Conservation Association v. Morton,* 498 F.2d 765 (D.C.Cir.1974). In *National Parks,* the D.C. Circuit set forth an alternative two-part test for determining whether a particular document is "confidential" under Exemption 4:

> [C]ommercial or financial matter is "confidential" for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competi-

tive position of the person from whom the information was obtained.

*National Parks,* 498 F.2d at 770; *see also Continental Stock Transfer & Trust Co. v. SEC,* 566 F.2d 373, 375 (2d Cir.1977) (adopting *National Parks* ).

Notably, the test outlined in *National Parks* does not appear to contemplate its application on a requester-specific basis. Indeed, it would be quite impractical to assert that the proper inquiry is whether there would be "substantial harm" if the document were to be disclosed *to a particular requester.* Under that rule, the Government would be required in every FOIA case to conduct an inquiry regarding the identity of the requester and the circumstances surrounding its request. The FOIA was not intended to be applied on such an individualized basis. "Congress [ ] created a scheme of categorical exclusion; it did not invite a judicial weighing of the benefits and evils of disclosure on a case-by-case basis." *FBI v. Abramson,* 456 U.S. 615, 631, 102 S.Ct. 2054, 2064, 72 L.Ed.2d 376 (1982).

Instead, as would be expected under the analysis in *Reporters Committee,* the appropriate inquiry under *National Parks* is whether there would be substantial harm if the documents were to be disclosed *to the general public.* Pratt & Whitney does not contest the District Court's finding that substantial harm would accrue to Pyromet and TK if the documents were to be disclosed to the public. Therefore, Pratt & Whitney cannot prevail.[4]

The judgment of the District Court is affirmed.

---

3. Pratt & Whitney makes much of the fact that, prior to litigation, the FAA disclosed certain requested documents to Pratt & Whitney that contained proprietary information. That information, however, was proprietary *to Pratt & Whitney* and indicated so on its face. Any disclosure, therefore, might have been proper under *Julian* since the requester was the "subject" of those documents. By contrast, here, the withheld documents indicate on their face that they are proprietary to Pyromet or TK. In any event, even if the FAA was not authorized

under *Julian* to disclose P & W proprietary information to Pratt & Whitney, that in no way supports the contention that the FAA should compound its error by committing further improper disclosures.

4. We do not imply here that the withheld documents can never be obtained by Pratt & Whitney. It may be the case that they are discoverable in civil litigation; however, the FOIA was not intended to serve as a substitute for discovery.