**Greg HERRICK, Plaintiff,**

v.

**Jane GARVEY, Administrator, Federal Aviation Administration, Defendant.**

**No. 99–CV–234.**

United States District Court, D. Wyoming.

Dec. 13, 2000.

---

Joseph F. Moore, Jr., Moore & Myers, Jackson, WY, John W. Harrington, Kimberly S. Cromer, Alan Farkas, Wilson, Elser, Moskowitz, Edelman & Dicker, Chicago, IL, Michael J. Pangia, Pangia & Hansen, Washington, DC, for Plaintiff.

Nicholas Vassallo, U.S. Atty's Office, Cheyenne, WY, for Defendant.

### ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

ALAN B. JOHNSON, District Judge.

The "Plaintiff's Motion for Summary Judgment," and the "Defendant's Motion for Summary Judgment" and the parties' responses in opposition one to the other have come before the Court for consideration. The Court, having reviewed the parties' written submissions and the materials offered in support of their respective positions, the pleadings of record, the applicable law, and being fully advised, FINDS and ORDERS as follows:

#### Background

This is a case brought by plaintiff seeking to obtain information from the Federal Aviation Administration ("FAA") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. The plaintiff seeks to compel the agency to disclose certain technical drawings and other data provided to the agency by the Fairchild Aircraft Corporation in 1935 in connection with its "Application for Approved Type Certificate" for an aircraft known as the Fairchild F–45.

The plaintiff states that he is interested in the preservation of antique aircraft and includes in his collection a 1936 F–45 origi-

nally built by Fairchild Engine and Airplane Corporation ("Fairchild"). Herrick now desires to restore the airplane to its original specifications. To accomplish this goal, plaintiff made a FOIA request for plans submitted by Fairchild to obtain an "Approved Type Certificate" in 1935 to the Civil Aeronautics Agency ("CAA"), the predecessor agency of the Federal Aviation Administration. Plaintiff recognizes that reproduction of the requested materials involves significant work on the part of FAA employees and states that he is willing to pay for it. There were only sixteen F–45s built, with the last one built in 1939, and plaintiff states there are only about three of these planes left today. The documents now sought by plaintiff were originally submitted by Fairchild to the agency in order to comply with federal requirements for the commercial production of an airplane.

After the FAA received Herrick's request for materials in 1997, Herrick was informed by the FAA that the materials would be released if Herrick obtained the permission of the owner of the blueprints. The proprietary rights for the materials are now held by Fairchild Corporation, a successor to the Fairchild Aircraft Corporation. Fairchild did not give Herrick permission to obtain the type certification materials and also informed the FAA that it did not want the materials to be released. Therefore, the FAA denied Herrick's FOIA request, as provided by Exemption 4 of FOIA, which exempts from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential[.]" 5 U.S.C. § 552(b)(4). Herrick has challenged the FAA's decision not to disclose the information, arguing that the materials at issue do not fall within Exemption 4 and that Fairchild does not own the rights to the materials and has no standing to object to their disclosure. Herrick has also argued that Fairchild has waived its protection under FOIA Exemption 4 and that the FAA has not demonstrated that Fairchild will suffer competitive harm through disclosure of the materials.

### Standard of Review

When an action is brought under FOIA to obtain information in possession of a government agency, the district court must review de novo the agency's decision not to disclose the requested materials. *Anderson v. Department of Health and Human Services*, 907 F.2d 936, (10th Cir. 1990), citing *DeSalvo v. I.R.S.*, 861 F.2d 1217, 1221 (10th Cir.1988). The district court must determine whether all of the requested materials fall within an exemption to FOIA and may not simply conclude that an entire file or body of information is protected without consideration of the component parts. *Id.*, citing *United States Dept. of Justice v. Julian*, 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988).[1]

### Discussion

FOIA reflects a general philosophy of full agency disclosure, *Center for Auto Safety v. National Highway Traffic Safety Administration*, 93 F.Supp.2d 1, (D.D.C. 2000), citing *Department of Air Force v. Rose*, 425 U.S. 352, 360–361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), in order to facilitate public access to government documents. *Id.*, citing *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), in turn citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989).

---

**1.** There is no genuine dispute in this case about the nature of the materials that Herrick seeks to obtain pursuant to FOIA. The certification materials include the technical information such as specifications, blueprints, and drawings that Herrick believes will facilitate restoration of the F–45 aircraft he owns.

"[D]isclosure, not secrecy, is the dominant objective" of FOIA.... The Act "requires agencies to comply with requests to make their records available to the public, unless the requested records fall within one or more of nine categories of exempt material." ...

*Center for Auto Safety v. National Highway Traffic Safety Administration*, 93 F.Supp.2d at *12–13 (citations omitted).

The policy underlying the FOIA has been described recently by the Second Circuit in *Halpern v. Federal Bureau of Investigation*, 181 F.3d 279 (2d Cir.1999):

> The policy of full disclosure of all information not exempted serves the need for citizens to know what their government is up to and, generally, where the information sought sheds light on an executive agency's performance of its official duties, full access to the information serves FOIA's purposes. There is a certain tension in balancing the public interest in having the government operate in the sunshine against the interests set forth in the exemptions that may, by shielding disclosure of information, keep the public in the dark.

*Halpern v. Federal Bureau of Investigation*, 181 F.3d at 285.

■ The process for determining whether any of the information sought is protected by Exemption 4 is described as follows:

> The first step is to determine whether any of the information is a trade secret; if so, it is categorically protected by Exemption 4.
>
> If the information is not a trade secret, it must next be determined whether the information is commercial information obtained by a person, and if so, whether submitting it to [the agency] was voluntary or mandatory. If the information is commercial in nature, obtained by a person, and voluntarily submitted, the information is protected by

Exemption 4 if it is not customarily disclosed to the public. If the information is commercial in nature, obtained by a person, required to be submitted, not customarily disclosed to the public, and its disclosure will either impair the Government's efforts to obtain similar information in the future, or cause substantial harm to the submitter's competitive position, then it is protected by Exemption 4. In all cases, however, if the information is publicly available, it is not protected by Exemption 4.

*Center for Auto Safety v. National Highway Traffic Safety Administration*, 93 F.Supp.2d at *13, citing *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1154 (D.C.Cir. 1987).

Here, the FAA asserts the type certification materials at issue in this case represent a classic example of trade secrets protected by Exemption 4 of FOIA. It also argues that Fairchild has sufficiently demonstrated that it holds the proprietary rights to these type certification materials. Consequently, the FAA concludes that this Court should affirm the FAA's decision to withhold the type certification materials from Herrick.

In 1935, Fairchild Aircraft Corporation submitted to the predecessor of the FAA, the Civil Aeronautics Administration, its "Application for Approved Type Certificate." The type certification process is described as follows by the United States Supreme Court in *United States. v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 805–807, 104 S.Ct. 2755, 2760–2761, 81 L.Ed.2d 660 (1984):

> The first stage of the FAA compliance review is type certification. A manufacturer wishing to introduce a new type of aircraft must first obtain FAA approval of the plane's basic design in the form of a type certificate. After receiving an application for a type certificate, the

Secretary must "make, or require the applicant to make, such tests during manufacture and upon completion as the Secretary ... deems reasonably necessary in the interest of safety...." 49 U.S.C. § 1423(a)(2). By regulation, the FAA has made the applicant itself responsible for conducting all inspections and tests necessary to determine that the aircraft comports with FAA airworthiness requirements. 14 CFR §§ 21.33, 21.35 (1983). The applicant submits to the FAA the designs, drawings, test reports, and computations necessary to show that the aircraft sought to be certificated satisfies FAA regulations. §§ 21.17(a)(1), 21.21(a)(b)..... In the course of the type certification process, the manufacturer produces a prototype of the new aircraft and conducts both ground and flight tests. § 21.35. FAA employees or their representatives then review the data submitted by the applicant and make such inspections or tests as they deem necessary to ascertain compliance with the regulations. § 21.33(a). If the FAA finds that the proposed aircraft design comports with minimum safety standards, it signifies its approval by issuing a type certificate. 49 U.S.C. § 1423(a)(2); 14 CFR § 21.21(a)(1) (1983).[2]

2. The case goes on describes further steps in the process:

Production may not begin, however, until a production certificate authorizing the manufacture of duplicates of the prototype is issued. 49 U.S.C. § 1423(b). To obtain a production certificate, the manufacturer must prove to the FAA that it has established and can maintain a quality control system to assure that each aircraft will meet the design provisions of the type certificate. 14 CFR §§ 21.139, 21.143 (1983). When it is satisfied that duplicate aircraft will conform to the approved type design, the FAA issues a production certificate, and the manufacturer may begin mass production of the approved aircraft.

Before any aircraft may be placed into service, however, its owner must obtain from the FAA an airworthiness certificate, which denotes that the particular aircraft in question conforms to the type certificate and is in condition for safe operation. 49 U.S.C. § 1423(c). It is unlawful for any person to operate an aircraft in air commerce without a valid airworthiness certificate. § 1430(a). An additional certificate is required when an aircraft is altered by the introduction of a major change in its type design. 14 CFR § 21.113 (1983). To obtain this supplemental type certificate, the applicant must show the FAA that the altered aircraft meets all applicable airworthiness requirements. § 21.115(a). The applicant is responsible for conducting the inspections and tests necessary to demonstrate that each change in the type design complies with the regulations. §§ 21.115(b), 21.33(b).

The methods used by FAA employees or their representatives to determine an applicant's compliance with minimum safety standards are generally the same as those employed for basic type certification. FAA Order 8110.4, Type Certification 32 (1967) (hereinafter FAA Order 8110.4); CAA Manual of Procedure, Flight Operations and Airworthiness, Type Certification § .5106(a) (1957) (hereinafter CAA Manual of Procedure).

With fewer than 400 engineers, the FAA obviously cannot complete this elaborate compliance review process alone. Accordingly, 49 U.S.C. § 1355 authorizes the Secretary to delegate certain inspection and certification responsibilities to properly qualified private persons. By regulation, the Secretary has provided for the appointment of private individuals to serve as designated engineering representatives to assist in the FAA certification process. 14 CFR § 183.29 (1984). These representatives are typically employees of aircraft manufacturers who possess detailed knowledge of an aircraft's design based upon their day-to-day involvement in its development. See generally Improving Aircraft Safety 29–30. The representatives act as surrogates of the FAA in examining, inspecting, and testing aircraft for purposes of certification. 14 CFR § 183.1 (1984). In determining whether an aircraft complies with FAA regulations, they are guided by the same requirements, instructions, and procedures as FAA employees. FAA Order 8110.4, p. 151; CAA Manual of Procedure

■ Exemption 4, asserted by the FAA as the basis for the non-disclosure of the type certification materials for the F–45, has been discussed by the Tenth Circuit in *Anderson v. Department of Health and Human Services*, 907 F.2d 936 (10th Cir. 1990). In that case, the Tenth Circuit rejected a broad definition of "trade secret" and stated that "trade secrets should be defined in the narrower common law sense, as 'a secret, commercially valuable plan, formula, process, or device that is used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort.' " *Id.*, at 944, quoting *Public Citizen Health Research Group v. Food and Drug Administration*, 704 F.2d 1280, 1288 (D.C.Cir.1983). "That definition requires that there be a 'direct relationship' between the trade secret and the productive process." *Id.* The Tenth Circuit stated that the D.C. Circuit's narrow definition is more consistent with the policies behind FOIA than a broader definition offered by the Restatement. It also directed district courts reviewing FOIA requests and applications of Exemption 4 to apply this narrow definition of trade secrets and to make findings that adequately explain the basis of its rulings and that relate its rulings either to specific documents or to clearly described categories of documents that are drawn with sufficient precision so that all documents within a particular category are similar in nature. *Id.*

■ In support of the FAA's motion for summary judgment, the declaration of Vito A. Pulera, Manager, New York Aircraft Certification Office, Federal Aviation Administration, identifies documents in the certification file at issue in this case. Attached to his declaration are indices listing the F–45 certification drawings and any additional data and/or drawings in the custody and control of the FAA. Pulera's declaration states that he reviewed the materials and that they:

... consist of the technical blueprints depicting the design, materials, components, dimensions and geometry of the aircraft, engineering analyses, and engineering test reports. All of these materials represent plans, formulae, processes and procedures which were used for the development, quality assurance, and manufacture of the Fairchild F–45 aircraft, and all of the materials clearly represent the end product of both innovation and substantial effort. They are directly related to the process of producing the aircraft.

Declaration of Vito Pulera, ¶ 11. The Pulera Declaration further states:

12. The Fairchild F–45 certification materials were commercially valuable when they were submitted to the government, and they are commercially valuable today. At the time they were submitted, the materials were essential to the production of the aircraft. Without them, a type certificate could not have been obtained for the aircraft design and the government would not have permitted the F–45 to be commercially produced.

13. Today, the F–45 certification materials have commercial value in the antique airplane market. For example, if a person restored an F45, and wanted to fly the aircraft, each repair to the aircraft must be certified as an airworthy repair. This procedure is significantly easier if the certification materials are available, as an airplane mechanic with an FAA inspection authorization (IA)

§ .70(b). FAA employees may briefly review the reports and other data submitted by representatives before certificating a

subject aircraft. Improving Aircraft Safety 31–32; FAA Order 8110.4, p. 159; CAA Manual of Procedure § .77.

can rely upon the certification materials to certify that the airplane is airworthy, and return the plane to service after repair. Without the materials the mechanic would have to establish some other means of demonstrating, to the FAA, the airworthiness of each repair made to restore the aircraft. This approach is more costly, time-consuming and uncertain than simply using the certification materials. Moreover, if a significant number of repairs were made, the cumulative effect of the multiple repairs would have to be considered by the FAA and the aircraft might not be approved as airworthy. An antique aircraft which can be flown is more valuable than the same airplane which cannot.

14. As another example, certification materials for antique aircraft are also valuable in the production of replicas for flight. Without the certification materials, the operator of the replica would have to perform or obtain the engineering analysis necessary to obtain a certificate to fly the aircraft. If the certification materials are available, this engineering would not have to be redone, and experimental airworthiness certificates could be obtained by the operators of the aircraft based upon the engineering in the already-existing certification materials.

Pulera Declaration.

Forty-seven pages of indices are attached to the Pulera Declaration listing many, many drawings and blueprints, identified by number and described briefly, as well as a listing of 15 microfiche cards, and contents pages for various tests and analyses related to the F-45.

The Declaration of Deborah F. Fountain, Records Manager, New England Region, Engine and Propellor Directorate, Federal Aviation Administration and FOIA Officer and Management Analyst, includes copies of records maintained by the FAA relating to the certification of the F-45 and Fairchild Aircraft Corporation. The documents indicate that the original applicant for the Approved Type Certificate was Fairchild Aircraft Corporation. In October 1939, a letter to the CAA states that:

> Through statutory merger, the assets and business of Fairchild Aircraft Corporation were, on September 27th, 1939, acquired by Fairchild Engine and Airplane Corporation.

> The business of Fairchild Aircraft Corporation will be continued as a Division of Fairchild Engine and Airplane Corporation, and such business will be done under the name of FAIRCHILD AIRCRAFT division of Fairchild Engine and Airplane. Corporation.

Materials submitted to the Court for review by Fairchild, a non-party, show the corporation has undergone several corporate name changes and changes through merger and otherwise over a substantial period of time. However, there are no materials in the file, particularly in the agency records that are relevant to plaintiff's claims, indicating that Fairchild Corporation has no proprietary interest in the F-45 certification materials that are in the custody of the FAA. Plaintiff cites no law imposing upon the agency a duty to trace the corporate evolution of Fairchild, or to follow or otherwise discern changes in the corporate status or structure of the original owner of these Type Certification materials.

Voluminous materials in the court file illustrate plaintiff's belief that the these corporation evolutions and the present-day knowledge of Fairchild and its representatives should play a significant role in the agency's decision to release or withhold the requested F-45 certification materials. This is a red herring. The Court believes that plaintiff's submissions miss the point

and deliberately divert attention away from the sole issue that is properly before the Court in this case. What is relevant in a FOIA inquiry will be the nature of the materials on file with the agency that are sought by the requester and whether or not those materials come within any of the nine enumerated exemptions, in this case, whether the materials sought are within the scope of Exemption 4.

The Court believes the F–45 certification materials do come within the scope of Exemption 4 as they are typical trade secrets customarily not available to the public, applying the definition of trade secret as secret, commercially valuable plan, formula, process, or device used for the making, preparing, compounding, or processing of trade commodities and that can be said to be the end product of either innovation or substantial effort, with a direct relationship between the trade secret and the productive process. The materials sought by Herrick that are in the possession of the FAA include, as itemized and identified in the Pulera declaration, drawings and blueprints required to manufacture the F–45—all materials clearly used in the production process for this aircraft and which are the end product of innovation and substantial effort.

Once the documents are identified as trade secrets, the inquiry ends and the documents are exempt from the disclosure requirements of FOIA. See *Public Citizen Health Research Group v. Food and Drug Administration*, 704 F.2d 1280, 1283 (D.C.Cir.1983); *Pacific Sky Supply, Inc. v. Department of the Air Force*, 1987 WL 25456, *1 (D.D.C.1987) (finding trade secret status for drawings of airplane fuel pumps were the end product of innovation or substantial effort and exempt from disclosure under FOIA). Upon review, the indices supplied in the Pulera declaration ensure that the agency had an adequate foundation for withholding disclosure of the materials Herrick seeks to obtain from the FAA in this action.

Whether or not the aircraft is in production today, as plaintiff has urged, also misses the mark as a target inquiry for the agency when responding to a FOIA request. The age or antiquity of materials in the custody and possession of the agency is irrelevant and is not a pertinent factor. *Center for Auto Safety v. National Highway Traffic Safety Administration*, 93 F.Supp.2d 1 (D.D.C.2000) ("Information does not become stale merely because it is old. The information in this case represents years of research and development and enormous financial investment that went into developing the air bag systems used in today's cars.")

Upon receipt of a FOIA request, the agency must examine its records, review materials held by the agency and determine whether they come within any pertinent exemption precluding disclosure of the materials. Here, the agency records identify Fairchild Industries, Inc. as the holder of the F–45 type certificate and the FAA has demonstrated that Fairchild Corporation is the successor in interest to the F–45 certification materials. See Declaration of Lynda Hutcherson. Fairchild, who has objected to disclosure of the materials by the FAA and has not consented to the release of these type certification materials to Herrick, is the apparent owner of the proprietary interests and trade secrets relative to the F–45. The FAA may accept at face value the claim that Fairchild has a protectable proprietary interest in the data submitted to the FAA. Fairchild is not a party to this litigation. FOIA is a public disclosure statute and is not intended to replace or supplement the discovery of private litigants. *Metex Corporation v. ACS Industries, Inc.*, 748 F.2d 150, 155 (3d Cir.1984), citing also *NLRB v. Sears Roebuck & Co.*, 421 U.S. 132, 143 n. 10, 95

S.Ct. 1504, 1513, 44 L.Ed.2d 29 (1975) ("the [FOIA] is fundamentally designed to inform the public about agency action and not to benefit private litigants"); see also *United Technologies Corporation v. Federal Aviation Administration,* 102 F.3d 688 (2d Cir.1996) (upholding FAA decision to withhold design drawings and noting that Exemption 4 covers information that is not merely confidential as to the requester, but confidential as to the general public and that all requesters are considered to have equal rights of access).

The Court has also considered Herrick's argument that the F–45 certification materials have already been released by Fairchild, either pursuant to a 1955 authorization of Fairchild to disclose drawings of Fairchild airplanes in the past and pursuant to prior disclosure to other FOIA requesters. The FAA acknowledges that it has provided drawing lists for the F–45 to others, including plaintiff Herrick, and has not asserted that those drawing lists are protected trade secrets. The authorization of Fairchild to disclose, given in 1955, has since been reversed by the corporation. Only those records released on authority of the 1955 authorization letter are in the public domain. The F–45 materials have not been released previously and have not been disclosed by the FAA; the corporation has reversed its earlier authorization to disclose materials; no waiver of Exemption 4 protection for the F–45 type certification materials can be found.

The Court finds that the FAA's determination that the F–45 type certification materials requested by Herrick are protected by Exemption 4 as trade secrets not subject to disclosure pursuant to FOIA should be affirmed. The defendant's motion for summary judgment shall be GRANTED. The plaintiff's cross-motion for summary judgment in his favor shall be DENIED. All other pending motions and appeals of orders of the Magistrate Judge shall be DENIED AS MOOT.

Accordingly, and for the reasons stated above, it is hereby

**ORDERED** that the defendant's Motion for Summary Judgment to Dismiss shall be, and is, **GRANTED. It is further**

**ORDERED** that the plaintiff's Motion for Summary Judgment shall be, and is, **DENIED. It is further**

**ORDERED** that all other pending motions and appeals of orders of the Magistrate Judge matter shall be, and are, **DENIED AS MOOT. It is further**

**ORDERED** that the parties shall bear their own costs and attorney's fees.

**JUDGMENT SHALL BE ENTERED ACCORDINGLY.**